E. EVERETT BURDON & others *vs.* MASSACHUSETTS SAFETY
FUND ASSOCIATION & another.

Suffolk.    April 4, 1888. — September 4, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Contract of Beneficiary Association — Attachment and Distribution
of Safety Fund.*

A beneficiary association agreed to make assessments at the death of members
upon the holders of certificates of membership then in force, and to pay the sums
collected not exceeding a limited sum as an indemnity.   It collected from mem-
bers under its by-laws, and deposited with a trust company, a safety fund, so
called, which was expressly limited to enure in a certain event to the benefit of
certain members only, for the payment of future dues and assessments.   This
fund was not to be used to make good such indemnity, but, if the association
should fail to pay the indemnity, was to be divided among the holders of certifi-
cates then in force, deducting the expenses of its management.   On the back of
each certificate was a statement that the safety fund would afford substantial
protection to members, and also a caution to the holder thereof to "read care-
fully all the conditions of this certificate," to which was added, "No person should
be a party to a contract without knowing all its conditions."   *Held,* on a bill in
equity to dissolve the association upon its failure before the event, that the safety
fund was to be divided among certificate holders not in default, including the
representatives of such deceased holders, a reasonable sum for its management
being first deducted, and that claimants for death losses as such merely were not
entitled to share in the fund, and could not attach it by the trustee process.
A certificate was to be null and void upon a member's failure to pay, 1st, dues for
expenses payable monthly while it remained in force; 2d, the sum due thereon
towards the safety fund within a year from its date; and 3d, duly notified assess-
ments within a time limited.   *Held,* that a failure to pay monthly dues after the
association ceased to do business would not forfeit a certificate; that a payment
towards the safety fund to entitle a holder to share therein might be made at
any time within the year, though after the date of filing the bill; but that non-
payment of any assessment, duly made before the latter date, within the limit,
would avoid a certificate.

BILL IN EQUITY, filed November 3, 1885, for the dissolution
of the first-named defendant, a beneficiary association, and for
the appointment of a receiver.   The first six plaintiffs were a
majority in number and interest of the stockholders in the as-
sociation, and the remaining plaintiff was a certificate holder,
who purported to act for himself and all other holders of cer-
tificates of membership in the association, which certificates
were alleged to have been issued by it up to May 20, 1885.
The other defendant was the Boston Safe Deposit and Trust

Company, with which the association had deposited in trust certain funds.

On February 8, 1886, a decree was made dissolving the association and appointing a receiver, who was directed, among other things, to " get in all the trust funds and income in the possession of the Boston Safe Deposit and Trust Company." On April 20, 1886, the receiver filed a petition, which he was permitted to prosecute, for the dissolution of certain attachments by the trustee process upon the funds in the possession of the trust company, and for an account of such funds and their payment over to the receiver.    Hearing before *W. Allen*, J., who reserved the case for the consideration of the full court, in substance as follows.

The association was duly organized on July 30, 1880, and in December, 1881, adopted by-laws, which provided that each member was to pay to the secretary within one year from the date of his certificate ten dollars towards a safety fund, so called, failure to pay within that time involving a lapse of the certificate ; that the treasurer should deposit all moneys received by him for such safety fund with the Boston Safe Deposit and Trust Company ; and that five certificates only, of one thousand dollars each, should be issued upon a single life.    The association began to do business in December, 1881, and during its existence issued two forms of certificates of membership.    Certificates of the first form were issued by it to a large extent up · to July 24, 1884, and certificates of the second form were issued from that date to May 20, 1885, but to a much less extent, about seventy-five dollars only being paid into the safety fund under this form of certificate.    The first form of certificate contained the following provisions, which alone are material :

" The Massachusetts Safety Fund Association, of Boston, Massachusetts, in consideration of the representations, agreements, and warranties made in the application herefor, and of the admission fee paid, and of the sum of ten dollars to be paid to said association to create a safety fund, as hereinafter described, and of twenty-five cents to be paid monthly for expenses, and of the further payment, in accordance with the conditions hereof, of all mortuary assessments, does hereby issue this certificate of membership in said association, under the safety

fund and endowment system, to ——, of ——, county of ——, State of ——, with the following agreements :.

" That said association will cause to be deposited said sum of ten dollars, when received, with the Boston Safe Deposit and Trust Company, for the uses and purposes of the association as hereinafter expressed ; and shall, at the expiration of five years from January 1, 1882, if said safety fund shall then amount to one hundred thousand dollars, or whenever thereafter said sum shall be attained, make a semiannual division of the net interest received therefrom, *pro rata*, among all the holders of its certificates in force under said system at such times, who shall have contributed, five years prior to the date of any such division, their stipulated proportion of said fund, by applying the same to the payment of their future dues and assessments ; and that whenever said fund shall amount to one hundred thousand dollars, all subsequent receipts therefor shall be divided by the said association in like manner as the interest.

" Said association further agrees, that if, at any time after said fund shall have amounted to one hundred thousand dollars, or after five years from January 1, 1882, if that amount shall not have been attained before that date, it shall fail by reason of insufficient membership, or shall neglect, if justly and legally due, to pay the maximum indemnity provided for by the terms of any certificate issued by it under said system, and such certificate shall be presented for payment to said association by the legal holder thereof, accompanied by satisfactory evidence of its failure to pay, after demand upon it, within the time herein stipulated for limitation of action : then it shall be the duty of said association to at once convert said safety fund into money, and divide the same (less the reasonable charges and expenses for the management and control of said fund) among all the holders of certificates then in force under said system, or their legal representatives, in the proportion which the amount of each of their certificates shall bear to the amount of the whole number of said certificates in force. And said association further agrees, that, so long as any certificate of membership under said safety fund and endowment system shall remain in force, said fund shall be in no wise chargeable or liable for any use or purpose except as above mentioned.

" Upon the death of the member aforesaid while this certificate is in force, all the conditions hereof having been conformed to by said member, and on the receipt by the president or secretary of said association of satisfactory proofs of such death, an assessment shall be made upon the holders of all certificates in force under said system at the date of such death, according to the table of graduated assessment rates given hereon, as determined by the respective ages and the number of such certificates in force at the date of such death, and the sum collected thereon shall be paid : provided, however, that in no case shall the payment upon this certificate in the event of such death exceed one thousand dollars, less any balance due said association for dues, assessment, or safety fund, to . . . . ."

This certificate is issued by the company, and accepted by the member, upon the following express conditions and agreements :

" 2.  Of Payments. — The person to whom this certificate is issued agrees to pay to said association twenty-five cents for expenses, on the first day of each and every month, after date of issue, and so long as this certificate shall remain in force. And also agrees to pay said association, upon each certificate that shall become a claim, an assessment in accordance with the table of graduated assessment rates, as printed hereon, within thirty days from day on which notice bears date.  And further agrees to pay said association the sum of ten dollars towards said safety fund, within one year from the date of this certificate, which will entitle the holder hereof to all the advantages under said fund as above set forth.

" 3.  Conditions of Acceptance. — The holder of this certificate further agrees and accepts the same upon the express condition that, if either the monthly dues, assessments, or the payment of the ten dollars towards the safety fund, as hereinbefore required, are not paid to said association on the day due, then this certificate shall be null and void, and no person shall be entitled to damages or the recovery of any moneys paid for protection while the certificate was in force, from said association ; and that, if a legal and just claim to benefit, under the terms of this certificate, shall arise before said safety fund shall have accumulated to one hundred thousand dollars, or before January 1, 1887, and the sum collected on the assess-

ments to be made in such event shall be paid over, as herein-before stipulated ; or such claim shall arise after said fund shall have accumulated to said amount, or after January 1, 1887, and this certificate shall be fully settled and surrendered ; or if any final division from said safety fund, as hereinbefore provided, shall be made by the association thereof on account of this cer-tificate ; then, in such cases, all liability of said association, on account of this certificate, shall cease.

" 4. Mode of giving Notice. — A printed or written notice, directed to the address of the member, as it appears at the time on the books of the association, and deposited in the post-office at Boston, or delivered by an agent of the association, shall be deemed a legal and sufficient notice for all purposes hereof. A transcript of the books of said association, certified by the secretary, showing such facts, shall be taken and accepted as conclusive evidence of the mailing of such notice, and of the facts aforesaid, as set forth in such transcript."

On one portion of the back of the certificate appeared the following statement : " This association, organized and char-tered under the laws of the Commonwealth of Massachusetts, and having its principal office in the city of Boston, will provide material and substantial protection for the families or other dependants of deceased members, to the extent of five thousand dollars, by means of the safety fund and endowment system, which combines an improved plan of co-operative protection with a safety fund deposit, thereby rendering all the members and their dependants perfectly secure, at the lowest possible rates. . . . A special deposit of all moneys for the safety fund is made with the Boston Safe Deposit and Trust Company, for the additional security of certificate holders."   On another por-tion of the back of the certificate appeared the following : " Read carefully all the conditions of this certificate.   No person should be a party to a contract without knowing all its conditions."

At the dissolution of the association, no certificate had been in force over five years, and while there were many claimants for death losses under certificates of membership, no unsatis-fied judgment then existed against the association.   Prior to November 3, 1883, certain claimants of death losses, including the administrator of one Leonard, had brought actions under

certificates of the first form against the association, and had attached by the trustee process the funds in possession of the trust company.  The trustee under a will of a deceased claimant under a like certificate had also filed a bill in equity in this court against the association and the trust company to reach the same funds to satisfy his claim.  The receiver had requested the trust company to pay over to him the funds in its possession, and had requested such claimants and trustee to discharge the trust company as such trustee and defendant, but all had refused to do so. The amount of the safety fund, with the accrued income thereof deposited by the treasurer of the association with the trust company, amounted, on January 1, 1888, to $19,180.56, which was undoubtedly exceeded in amount by undisputed claims for death losses.  The great majority of all the persons who had ever been holders of certificates in the association were persons of limited means, and not possessed of property which could be taken in satisfaction of any assessments if made, and it would be futile to attempt to obtain moneys with which to pay death claimants by means of general assessments.

The judge found that the association rightfully might deduct from the safety fund a reasonable sum for its management, and that this matter should be referred to a master, to ascertain and report what would be such a reasonable sum, and what was due from the association for salaries and expenses.  The holders of certificates and the representatives of deceased holders contended that they were entitled to have the safety fund and accrued income distributed among them, while the claimants of death losses contended that the fund should be applied towards the payment of their claims.

*C. Robinson*, for the receiver.

*W. C. Wait*, for the certificate holders.

*S. B. Allen & A. Wellington*, for attaching creditors.

*H. H. Buck*, for the administrator of Leonard.

C. ALLEN, J.  The principal questions arising in the present case relate to the disposition which shall be made of the safety fund, so called, which has been accumulated, and which now amounts to about $19,000.  There is nothing in the statutes of the Commonwealth which aids in determining these questions, and the determination of them must depend wholly upon the

terms of the contracts which the association made with those who took its certificates. These certificates were in two forms; but no distinct question has been presented, or arises, under the second form of certificate. It does not appear that there were any claims for losses by death under the second form, and only seventy-five dollars went into the safety fund from holders under it. The counsel for the certificate holders makes no special contention in regard to this amount, and the questions may be dealt with as if the whole of the safety fund came from holders of certificates under the first form.

By the terms of the contract, the safety fund is not in any event directly liable for losses by death. It is rather a fund for the benefit of living certificate holders, than security for the payment of money to the representatives of deceased holders. The certificate is explicit upon this point. Upon the death of a member, all that the association undertakes to do is to make an assessment upon the holders of all the certificates in force at the date of the death, and to pay the sum collected thereon, not however in any case exceeding $1,000. The safety fund was to enure to the benefit of members of five years' standing, by having the income from it, after five years, or after the accumulation should have amounted to $100,000, applied to the payment of their future dues and assessments. If the association should fail to pay the indemnity provided for in the certificate, then the safety fund was to be converted into money, and divided among all the holders of certificates then in force; it was not to be drawn upon to make good the indemnity for a loss by death. And there was a further express stipulation, that "said fund shall be in no wise chargeable or liable for any use or purpose except as above mentioned."

Now it is true that the association failed at an earlier period than was expressly provided for; that is to say, it failed before the safety fund amounted to $100,000, and before five years had elapsed. But, under the clause last copied above, no other use is to be made of the safety fund than to apply it as above mentioned.

The persons who make claim for losses by death contend that this result will work an injustice, and that holders of certificates understood, and had reason to understand, that the safety fund

was to provide a security for the losses by death. This argument is founded on a statement on the back of the certificates, that this association will provide material and substantial protection for the families or other dependants of deceased members, by means of the safety fund, which combines an improved plan of co-operative protection with a safety fund deposit, thereby rendering all the members and their dependants perfectly secure, at the lowest possible rates. But this statement is no part of the contract; it is only general language, not designed to supersede the necessity of reading the contract itself. There was another notice on the back of the certificate, directly calling upon the holder to " read carefully all the conditions of this certificate"; and adding, " No person should be a party to a contract without knowing all its conditions." However fallacious and visionary the hopes inspired by this form of life insurance might be, and however ill advised its provisions, we find nothing to vary the rights of the parties, ascertained from the terms of the contract into which they have allowed themselves to enter. The court cannot act as a special providence to protect one class in particular, where all are or may be losers. All we can do is to take the contract as we find it.

It follows, that upon the death of a member no attachment could be made of the safety fund, nor any action at law be maintained against the association, unless upon a refusal to lay an assessment upon the holders of certificates in force. The actions which were brought appear to have been brought under the misconception that the association had bound itself to pay $1,000. It had only bound itself to lay an assessment, and to pay over the amount collected thereon. For a refusal to lay such an assessment, it may be that an action at law would lie; but the more appropriate remedy would be by a proceeding in equity to compel the association to lay the assessment. One of the conditions and agreements expressed upon the face of the certificate is, that "the person to whom the certificate is issued agrees to pay to said association, upon each certificate that shall become a claim, an assessment in accordance with the table of graduated assessment rates, as printed hereon, within thirty days from day on which notice bears date." For a failure to make such payment, the certificate would become null and void.

This was the security furnished for payment of losses by death, and the way in which the safety fund was expected indirectly to improve this security was by ultimately furnishing a fund to enable certificate holders to pay their assessments. Such is the plain language of the contract, and such is the construction which has been given to similar contracts in all the cases but one that have been brought to our attention. The single exception is in *Lueders* v. *Hartford Ins. Co.* 4 McCrary, 149; but the decision of the district judge in that case is overruled or overborne by other decisions. *Smith* v. *Covenant Mutual Benefit Association,* 24 Fed. Rep. 685, 688. *Eggleston* v. *Centennial Mutual Life Association,* 5 McCrary, 484. *Bailey* v. *Mutual Benefit Association,* 71 Iowa, 689. *Newman* v. *Covenant Mutual Benefit Association,* 72 Iowa, 242. *Rainsbarger* v. *Union Mutual Aid Association,* 72 Iowa, 191. *In re Protection Ins. Co.* 9 Bissell, 188. *In re Solidarite Association,* 68 Cal. 392. *Curtis* v. *Mutual Benefit Co.* 48 Conn. 98.

The various attachments, therefore, must all be dissolved, and the claimants of losses by death will take nothing from the safety fund in consequence of the death of the holders of the certificates under which they claim; and the safety fund must be divided among all the holders of certificates in force, or their legal representatives, in the proportion which the amount of each of their certificates (that is, the certificates of each) bears to the amount of the whole number of said certificates in force. The date to be adopted in taking this account will be the date of the filing of the bill for the dissolution of the association, namely, November 3, 1885. The subsequent proceedings in the cause relate back to that date. *Atlas Bank* v. *Nahant Bank,* 23 Pick. 480, 489. *Mayer* v. *Attorney General,* 5 Stew. (N. J.) 815. It must therefore be ascertained by reference to a master, if necessary, what was the whole amount of certificates then in force, and the amount of certificates then held by each holder, so that each may receive his percentage of the net amount to be divided.

Certain matters of detail may be mentioned, with a view to avoid future questions. The legal representatives of holders of certificates who died without having incurred any forfeiture, and who have not had any benefit from an assessment, though not

entitled to maintain any claim upon the safety fund in consequence of such death, will share in the division of the safety fund with other holders of certificates in force.  By the third condition upon the certificates, the same are to be null and void if either the monthly dues, assessments, or the payment of ten dollars towards the safety fund, are not paid to the association on the day due.  The monthly dues, by the second condition, are twenty-five cents on each certificate for expenses, payable on the first day of each month, so long as the certificate remains in force.  This payment for expenses means the expenses of carrying on the business of the association, and would cease to be due when the association ceased to carry on business.  If, then, the association stopped business on May 20, 1885, — as we infer from the averments of the bill, though the fact is not distinctly stated and nowhere clearly appears in the papers before us, — a certificate would not be forfeited by the failure to pay the monthly dues after that date.  In respect to the payment of ten dollars towards the safety fund, it might happen that the year from the date of the certificate had not expired on November 3, 1885, so that the holder was not in default on that date.  In such case, in order that his certificate may be treated as then in force, so as to entitle him to share in the division of the safety fund, it must be made to appear that the payment of the ten dollars was made within the year, though after that date; as it would be manifestly contrary to the true intent of the contract to allow holders to share in the division of the safety fund who had contributed nothing towards it.  Non-payment of any assessment duly made prior to November 5, 1885, within thirty days from the day on which the notice of such assessment bore date, would invalidate a certificate.  This implies, however, that due notice of such assessment was given, as provided in condition No. 4.

By the terms of the certificates, the association, upon a division of the safety fund, was to be entitled to the reasonable charges and expenses for the management and control of the same, and this must be ascertained by the master, as directed by the single justice.  It is to be observed, that only so much is to be retained for this purpose as will pay the reasonable charges and expenses for the management and control of said fund, which was all

deposited with the Boston Safe Deposit and Trust Company; and under this head general expenses of the association are not to be included, or at any rate no more than would be a proper proportion for the management and control of said fund.

It has been suggested by the receiver, that assessments for losses by death may now be made under an order of the court. In answer to this, it is sufficient to say that none of the holders of claims for such losses have made any application, either to the association or to the court, for such an assessment; and besides, it is expressly found by the justice before whom the cause was heard, that it would be futile to attempt to obtain any moneys with which to pay death claims by means of general assessments. This relieves us from the necessity of entering upon the consideration of the question, whether under other circumstances the court could or would order such assessment to be laid, in the course of winding up an association of this peculiar character, and how far such a method of proceeding should be carried, — a question clearly of some difficulty.    See *In re Protection Ins. Co.* 9 Bissell, 188.

A decree will be entered directing the Boston Safe Deposit and Trust Company to transfer the safety fund to the receiver, to be divided in pursuance of the foregoing opinion; and the reasonable costs and expenses incident to this litigation may be allowed by a single justice out of the fund.

*Decree accordingly.*