IN THE MATTER OF THE EQUITABLE RESERVE FUND LIFE ASSOCIATION OF THE CITY OF NEW YORK.

| 61 | 299 |
| 131a | 354 |

*Assessment life insurance — a death fund is subject only to death claims — disposition of a reserve fund — an assessment levied to pay a particular death claim, applied by a receiver to that claim — death after the dissolution of the corporation — an assessment levied after the appointment of a receiver is valid — effect of a failure to pay it after notice.*

The Equitable Reserve Fund Life Association of the City of New York was created under chapter 175, Laws of 1883, which act was amended by chapter 285, Laws of 1887. It had no capital, claims against it being provided for by assessments. Its constitution provided for the establishment of a death fund and also of a reserve fund. An assessment, when levied, was applied to the extent of about seventy per cent to the death fund; of five per cent to a contingent fund, and of twenty-five per cent to the reserve fund. The certificate of membership, as well as the constitution of the association, set apart the death fund exclusively for the payment of death claims. The disposition of the reserve fund, in case the corporation was dissolved, was in no manner provided for. The constitution, however, gave to the trustees power to use the reserve fund to meet any want or necessity of the association that might arise by reason of unforeseen contingencies; but prohibited its use for the payment of expenses.

In September, 1889, a temporary receiver of the corporation was appointed, and thereafter, under authority of the court, the trustees levied the last assessment ever levied upon the members. From this assessment a considerable sum was realized, by which the death fund profited to the extent of seventy per cent. In November, 1889, the receivership was made permanent and the corporation was dissolved.

Upon an application to the court by the receiver, for instructions with reference to the distribution of the reserve fund,

*Held*, that death claims were properly payable out of the death fund, including in that fund its share of the assessment levied after the appointment of the temporary receiver, and that no other claims could be paid from said fund.

That, it appearing that the death fund was quite insufficient to pay in full the death claims, the holders of the latter were entitled to share *pro rata* with other members and creditors of the association in the reserve fund; the case being one where "an unforeseen contingency" might be said to have arisen.

That this followed from the fact that the corporation was an assessment association, and that its reserve fund was, in case of its dissolution, in no manner disposed of by its charter, and hence must be distributed according to equitable principles.

That where an assessment was levied, while the corporation was existing, to meet a particular death claim, and payment was postponed by reason of a dispute having arisen in regard to the claim, the receiver was bound to use the amount of such assessment to pay that claim.

That a death claim, made on behalf of a member, who died after the corporation was dissolved, was not entitled to payment from the death fund, but was a claim to be paid in like manner as that of a general creditor.

That assessment companies stand upon a different footing from those having a paid up capital in regard to assessments levied, after insolvency and before dissolution, by authority of the court, in conformity with their constitutions.

That an assessment levied by the trustees after the appointment of the temporary receiver, and before the dissolution of the corporation, by direction of the court, was valid, and a failure to pay it, after notice duly served, forfeited a certificate of membership, as expressly provided in the certificate and in the by-laws of the association.

APPEALS by Theodore A. Liebler, Jr., and by certain others, members of the Equitable Reserve Fund Life Association, from various parts of an order, entered in the office of the clerk of the city and county of New York on the 7th day of January, 1891, confirming the report of a referee and overruling the exceptions of the several claimants filed to said report.

*A. B. Smith, De Lancey Nicoll, F. R. Minrath, Samuel H. Benton, Lucius McAdam* and *Henry C. De Witt*, for the appellants.

*Henry H. Whitman*, for the respondent.

DANIELS, J. :

The Equitable Reserve Fund Life Association, of the city of New York, was created a corporation on or about the 17th of May, 1883, under the authority of chapter 175 of the Laws of 1883. It continued its business uninterruptedly from that time until the 18th of September, 1889, a period of upwards of six years, when, upon the application of the attorney-general, John Van Glahn was appointed temporary receiver of the assets and property of the corporation. He continued in that capacity until the 9th of November, 1889, when a decree was made dissolving the corporation and he was appointed and became permanent receiver. As such, there came into his hands the sum of $78,953.99, or thereabouts. This sum was divided into two funds under the constitution and by-laws of the association, one of which was designated the death fund, which was applicable alone to the payment of beneficiaries in certificates of insurance upon the lives of persons becoming deceased during the existence and force of the certificate. This fund amounted to the sum of $18,401.35, which was very largely deficient in its ability

to meet the claims made by beneficiaries under certificates issued to persons who had become members of the association and fulfilled all their obligations, and were deceased prior to the dissolution of the association. The other was denominated the reserve fund, and amounted to the sum of $63,614.79. And it is as to the disposition of this reserve fund that the principal controversy in this proceeding has arisen.

The receiver, being in doubt as to the manner in which this latter fund should be distributed, and the allowance of claims that were presented in favor of beneficiaries under certificates where the assured was deceased, applied to the court, by petition, for instructions, and a very comprehensive reference was directed, including these and other subjects of uncertainty or controversy arising in the case. And upon the hearing before the referee all points of a controverted character were presented to him, and he decided, as the constitution of the association required that to be done, as well as the form of the certificate of insurance, that the persons in whose favor death claims existed were entitled to an exclusive preference to payment, so far as that could be made, out of this death fund, but that they had no legal claim whatever against the reserve fund for the amount remaining unpaid, after the death fund was exhausted. In this decision, that the beneficiaries having existing claims were entitled to payment out of the death fund, the referee is fully supported by the constitution of the association as well as the form of the certificates which were issued. The association had no capital whatever, but the claims arising against it were provided for by means of an assessment upon the persons holding certificates of insurance issued by it. And the amount realized through these assessments, as the constitution was finally amended, was applied to the extent of seventy per cent, to the creation of this death fund. Five per cent of it was applied to a contingent fund, created to meet other expenses and liabilities of the association, and the remaining twenty-five per cent was devoted to the creation of the reserve fund. These assessments were, in the first instance, made as the claims arose in favor of beneficiaries under the certificates, but that was finally changed by an amendment to the constitution providing for the imposition of assessments on the second Tuesday of every other month in each year. And this proceeding was continued

under the authority of the court by the receiver, through the intervention of the trustees of the association, in the month of October, 1889, which was the last assessment made upon the holders of certificates in this association. And from that assessment was realized the sum of $7,044.40 which formed a part of the aggregate death fund already mentioned. For the payment of claims of this character the constitution contained this provision:

"Sec. 1. Upon the death of a member during the continuance of his or her certificate or certificates in full force, the association shall, within three months after due notice and satisfactory proofs of such death, and the approval thereof by the executive committee, pay to the beneficiary named on the books of the association, if such beneficiary be living at the time of such member's death, otherwise to the heirs or legal representatives of such deceased member, the amount to which the same may appear entitled according to the books of the association and the terms of the certificate of membership, out of the death fund (hereinafter defined) of the association; or, if the death fund shall then be insufficient to pay the whole of any such claim, then *pro rata* with other claims out of the moneys to be realized to said death fund from the assessment to be made as hereinafter described; provided, however, that there shall be first deducted therefrom any counter-claim or indebtedness due from said member to the association, And no death claim shall become otherwise due or payable, except from the reserve fund as hereinafter provided."

And it was further provided, by section 6 of article 7 of the constitution, that the death claims should be payable from the death fund account. And this was conformable also to the certificates issued by the association for the insurance of its members. No other claim whatever was permitted to be made a charge upon this death fund, but it was exclusively limited to the payment of the claims of beneficiaries under certificates issued to deceased members. And so far as the referee concluded that what are called the death claims maturing prior to the dissolution of the association were entitled to payment as a first charge upon this death fund, there seems to be no ground to doubt its correctness. In this respect the case differs entirely from *People* v. *Security Life Insurance and Annuity Company* (78 N. Y., 115). In that action the company, which

was a corporation doing its business upon an actual capital, issued ordinary policies of insurance. And when it became insolvent the persons insured were thereby absolved from the payment of further premiums, and entitled to a valuation of their policies at the time when the insolvency commenced to exist. And so it was also held in *In re Albert Life Insurance Company* (L. R., 9 Eq., 706); while in the present case the association depended wholly upon assessments to be made to meet the claims arising against it. And it obtained the power and had the authority to continue such assessments as long as the association legally existed, which included the assessment made under the application of the receiver in the month of October, 1889. But after the dissolution of the association no authority appears to have survived through which additional assessments could be made. And the result which followed this disability is that the death claims arising prior to the dissolution of the association have been paid much less than a moiety of their amount.

To meet this large deficit they were urged upon the attention of the referee as entitled to payment out of the reserve fund. But he rejected that view, and held the reserve fund to be only distributable proportionately among the holders of unforfeited certificates in the association at the time of its dissolution. This conclusion was considered to be supported by the peculiar language of the certificate and of the constitution of the association. And if that view is to be sustained, then the case of *Burdon* v. *Massachusetts Safety Fund Association* (147 Mass., 360), seems to be an authority in favor of his conclusion. But this case differs very significantly from that authority, in the circumstance that no disposition of the reserve fund has been provided for by the constitution or by-laws in any manner after the dissolution of the association. In that case there was such a provision giving the safety fund to the persons holding certificates in the company.

Neither the constitution, by-laws or certificate of insurance of this company has in any form prohibited the payment of the deficiency remaining in death losses out of the reserve fund. But the constitution has contemplated the fact of such payment in the discretion of the board of trustees. For it has invested them with authority to use the reserve fund to meet any want or necessity of the association that might arise by reason of unforeseen contingen-

cies. And the unforeseen deficiency in the death fund seems to be fairly within the effect of this language. It has also been provided in the occurrence of another event, which never, in fact, however, was attained, that the excess in the reserve fund exceeding the sum of one hundred thousand dollars might be used towards making up any deficiency then existing in the death fund. The constitution has also prohibited the reserve fund from being used for the payment of expenses. But it has nowhere prohibited the use of this fund, after the dissolution of the association, to supply the deficiency in the death fund. Neither has it given, either directly or by implication, the reserve fund, in any event, to the holders of certificates in the association It is true that it was declared in the certificate that this fund should be deposited and invested, in trust, for the benefit of the members of the association. But the extent to which that benefit was provided for, or in any manner conferred, was through the issuing of bonds to members, under certificates issued to those who paid the assessments made against them, for the period of at least five years. In favor of such members or holders of certificates the constitution did provide for an apportionment of the reserve fund to their holders on such basis and principles as the board of trustees should deem safe and equitable. And to render the apportionment available, the members to be included in it were authorized, after ten years from the date of the apportionment, to apply the sum apportioned towards paying dues and assessments accruing on the certificate. But this was qualified by the further proviso that if the member in whose favor an apportionment was made should die, or otherwise cease to be a member, leaving the apportionment unapplied, that then it should be withdrawn and apportioned in like manner to the holders of other certificates at the expiration of the next five years in which the apportionment could by the constitution be made. The only advantage secured to the holder of the certificate by this apportionment was the right to use the amount apportioned, after the expiration of ten years from the time of making the apportionment towards the payment of future dues and assessments upon his certificate, and that never became available. This contemplated no advantage to the member under the apportionment after he ceased, by death or otherwise, to be a member of the association, but the benefit conferred was wholly to

be realized while he remained a member, and the association itself continued to exist. If he ceased to be a member or the association should be dissolved, from that time, as there could be no further assessment, very manifestly under these provisions of the Constitution he could derive no benefit whatever from the apportionment. It accordingly did not affect the disposition of the reserve fund in any manner whatever, if the association itself should cease to exist. The regulations, on the other hand, were all made in contemplation of the continued existence and business ability of the association. When it should cease to exist no regulation or provision whatever was anywhere made controlling, directing or indicating what disposition should be made of this reserve fund, but it was left entirely to be disposed of under the rules and regulations to be applied by law to the distribution of the assets of the insolvent corporation. There was but one appropriation made from the reserve fund under this authority vested in the trustees, and that was in August, 1889, amounting to no more than the sum of $8,204.72 ; and, as that became ineffectual by the dissolution of the association, the reserve fund remained unaffected by any action, direction or disposition on the part of the trustees of the association. And that fact seems to place the disposition of this fund under the authority of *People* v. *Security, etc., Company* (78 N. Y., 114), which, in the main, has also been sanctioned by *Attorney-General* v. *North American Insurance Company* (82 N. Y., 172).

The provisions of the constitution of the association having failed to make any disposition of this fund, for the apportionment necessarily failed with the dissolution of the association, the fund remained the unqualified property of the association itself. It was not given to the members holding the certificates at the time of the dissolution, neither was any authority given to the trustees to bestow it on such members, nor has the constitution in any form created any power of that description. And the consequence seems to follow that this fund, as the property of the association itself, at the time when the permanent receiver was appointed, became available to meet all the unsatisfied debts and obligations of the association, and was not distributable, as that was directed to be done by the referee, among the holders of certificates of insurance. In this respect section 3 of

chapter 285 of the Laws of 1887, amending the act under which the association was formed, appears to contemplate a general application of the assets of the association among all the persons having claims or demands against it. For that purpose it has provided for the appointment of a receiver or trustee "for the distribution of its assets among its members, certificate-holders, policy-holders and creditors," which contemplates equality of disposition among these various persons in proportion to their final rights against the association. The provision has been awkwardly connected with the verdict of a jury on the disposition of the controverted right of the attorney-general to the appointment of a receiver. But it could not have been intended by the legislature that it should depend alone upon this event. There was no reason why it should be made to follow the verdict, and not generally to include the disposition of the assets of the association. And while the language employed has in form made this disposition dependent upon the verdict, it is still to be understood as the creation of a general authority conferred upon the court to distribute the assets of the association among the persons actually appearing entitled thereto. And that is conformable to the legal principles which have been applied to the distribution of the assets of insolvent corporations when they have been brought before the courts for distribution.

As the property of this association at the time when its affairs passed into the hands of the permanent receiver, this reserve fund became entitled to be used and appropriated to the satisfaction of all legal demands existing against the association. It was its property. And as its disposition had been no otherwise incumbered or declared by the authority of the association, it was subject to this obligation. And among the persons entitled to satisfaction from this fund are those in whose favor death claims accrued and have not been wholly paid by the amounts received by them from the death fund. For they were creditors of the association entitled to be satisfied, so far as the assets were sufficient for that purpose, equally with other creditors having demands against them. And among these, under the authorities which have been referred to, are to be included the owners of the certificates of insurance in force at the time of the dissolution of the association. For to them the association had become obligated to maintain its existence and

ability to meet the certificates in the event of the decease of the persons upon whose lives they were respectively issued. The extent of this liability was fully considered in *People* v. *Security Insurance Company*, already referred to. And it was there held in the event of the company becoming disabled to continue the insurance as this association did when it was dissolved, that a liability arose in favor of the holder of its obligation to pay to him such a sum as would be sufficient to obtain a similar insurance at the same rate of premium or assessment in another similarly organized association. To that extent the holder of the certificate became a creditor of the association, equally entitled to payment with the beneficiaries in the death claims left unpaid by the amount of the death fund. And in principle this has been followed in *Darrow* v. *Family Fund Society* (116 N. Y., 537), and *O'Brien* v. *Home Benefit Society* (117 id., 310). And between them, after paying the expenses and any other superior liabilities, the reserve fund of this association should be distributed. All these parties are equally creditors of the association, entitled, as far as that may be done, to the satisfaction of their unsatisfied legal claims, by the application to them of this reserve fund. This obligation results from the necessities of the situation. Neither the contract made by the certificate, qualified as it was by the constitution and the by-laws, nor the constitution or by-laws, provided for any final disposition of this fund in the event of the dissolution of the association. And it consequently devolved upon the court to distribute it under the rules and dictates of the principles of equity. And they require its equal distribution among all the creditors of the company.

A special preference was claimed in favor of the beneficiary John Hurley under the certificate of insurance issued on the life of Johanna Hurley, who died on the 23d of April, 1889. It appeared by the evidence that the assessment following the decease of the person named in the certificate, was specially made to pay the death claim asserted in favor of this beneficiary, together with others which had then accrued against the association. And under the assessment an amount was realized more than sufficient to satisfy all the death claims which at that particular time were required to be provided for. But the amount payable to this beneficiary was not paid over, for the reason that a dispute afterwards arose concerning the liability

of the association to make the payment. And the fund realized for this purpose passed into the hands of the receiver and became a part of the amount of the death fund of the association. The referee considered that this beneficiary was not entitled to the payment of the claim existing in her favor out of this balance which was paid over to the receiver. In that he seems to have been in error, for the money was raised to pay this and the other claims allowed at the time by the trustees. It was a special fund received by them, which it was their duty to pay over, inasmuch as it turned out that there was no substantial ground for denying the validity of the claim. And the receiver, having this money specially charged with this obligation, should apply it to the payment of this demand.

It was also claimed in behalf of Benjamin J. Kleme that he was entitled, as the beneficary named in the certificate issued to John P. Schulte, to participate in the division of the death fund. But is appeared that Schulte died on the 12th of November, 1889, after the association had become dissolved and the rights of the partier had been fixed by that event. He was at the time of its occurrence the holder of a certificate alone entitled to no further compensation than such an amount as would enable him to secure another insurance in a similar company at the same rate of liability to assessment. There was, therefore, no error in rejecting the claim made by him to satisfaction out of assessments so far as they have been appropriated to the creation of the death fund. The claim made by Martin and Johnson as the beneficiaries of Mrs. Johnson, who died on the 4th of July, 1889, has been sufficiently disposed of by what has been said concerning the disposition which should be made of the reserve fund. And so, also, has that made by Maggie C. Lewis as the beneficiary of J. C. Lewis, who died on the 10th of May, 1889. And the same is true as to the claim presented in favor of Theodore A. Liebler, Jr.

This leaves alone to be considered the claims presented by John R. Foley and others, who failed to pay the last assessment made in October, 1889, and were, therefore, held by the referee to have forfeited their certificates. It appeared by the evidence that the notices which were required to be served of the making of this assessment were served upon these persons, and they failed to pay the amount assessed against each of their certificates. And in that event, not

only the certificate itself, but the by-laws of the association, provided for the forfeiture and termination of the certificate of the person in that manner in default. Within the express language employed for this object, therefore, these certificates were forfeited. It has been insisted that the assessment made in October, 1889, and which is known as the thirty-fifth assessment, was made without authority, for the reason that a temporary receiver had been appointed for the company and had entered upon the discharge of his duties prior to the time of the making of this assessment. But that fact did not terminate the ability or the obligation of the trustees to make the assessment. On the contrary, it was provided by the constitution, as it had been amended, and subject to the right to make which the certificates were expressly issued, that the assessment should be made on the day in October in which it was made. The receiver applied to the court for liberty or authority to have it made, and that was accredited to him, and under that the trustees made the assessment. And in all respects they appear to have proceeded regularly in so doing. Associations or corporations of this description are distinguished as to the exercise of this authority from life insurance companies carrying on their business upon designated as well as contributed capital. Their insolvency puts an end to the right to demand the payment of premiums on the policies. But the business of this company was carried on solely upon contributions expected to be obtained from its members through the instrumentality of these assessments. And both the right and ability to make the assessment and require its payment from the holders of the certificates continued as long as the association retained its corporate existence. This subject was considered in *McDonald* v. *Ross-Lewin* (29 Hun, 87); and so it was in *Vanatta* v. *New Jersey, etc., Insurance Company* (31 N. J. Eq., 15); and in *Commonwealth* v. *Massachusetts, etc., Insurance Company* (112 Mass., 116). And the exercise of this authority has been further sanctioned in *New Hampshire Mutual Insurance Company* v. *Rand* (24 N. H., 428) and *Sterling* v. *Mercantile Mut. Insurance Company* (32 Penn., 75). Both upon principle and authority this assessment, therefore, appears to have been regularly as well as legally made. And as the parties failed to pay their proportionate parts of it, after they had been regularly notified of it, and payment required, their certificates were forfeited and became void under the language

forming a part of each certificate, as well as under the by-laws of the association. And because of this default there seems to have been no error in the disposition of this part of the case as it was submitted to and decided by the referee.

In this and the other respects, in which the referee is considered to have rightly disposed of the claims submitted to him, the exceptions to his report were correctly overruled at the Special Term, and the order to that extent should be affirmed. But in the conclusions reached by him that the death claimants were restricted to the death fund for the satisfaction of their claims, and were unauthorized to participate in the distribution of the reserve fund upon an equality with the holders of certificates in force at the time of the dissolution of the corporation, for the residue remaining unpaid to them after exhausting the death fund; and as to the claim made in behalf of John Hurley the order should be reversed and the report of the referee set aside. And as to those matters a further hearing should be provided in conformity to the conclusions which have been indicated in this investigation to determine the value of the certificates, and apportion the fund between them and the other creditors of the association. And this disposition of the case, in each respect, should be without costs to either party.

Van Brunt, P. J., and Lawrence, J., concurred.

Order modified as directed by opinion, and, except as modified, affirmed, without costs to either party.