## CURRIER v. MUTUAL RESERVE FUND LIFE ASS'N.

(Circuit Court of Appeals, Fifth Circuit.   May 7, 1901.)

### No. 1,017.

INSURANCE—RIGHT OF AGENT TO COMMISSIONS—REFUSAL OF COMPANY TO COMPLETE CONTRACT.

An agent for a life insurance company, soliciting business on commission, although by the terms of his contract he is entitled to commissions only on accepted business, and not unless the premiums from which such commissions are to be paid have been received in cash by the company, may nevertheless recover his commission on applications secured by him from persons able and willing to pay the premiums, which were accepted by the company, but on which the premiums were not paid, where such nonpayment was due solely to the fact that the company changed its rates after the applications were taken, and demanded, as a condition to delivery of the policies, premiums largely in excess of those at which the agent was expressly authorized to take the applications.

In Error to the Circuit Court of the United States for the Western District of Texas.

The plaintiff in error sued the Mutual Reserve Fund Life Association, the defendant in error (hereinafter called "plaintiff" and "defendant"), for commissions alleged to have been earned by him, as the soliciting agent of the defendant, under a written contract of employment at an agreed rate of commissions. In pursuance of his agency the plaintiff solicited and obtained applications for life insurance from officers of the 33d regiment of the United States volunteers. The applications were made in the usual way, and upon the usual forms prescribed by the defendant, and upon proper examination of the applicants by a physician, and were duly forwarded to the defendant by the plaintiff. The defendant pleaded a general denial, and that it was not liable in any way to the plaintiff in any sum of money by reason of said applications, because it had not received the premiums, or any part thereof, for any policies sought to be obtained by said applications, and, not having received or had in any way tendered to it the first or any subsequent premiums for said policies of insurance, it was not liable to the plaintiff in any sum on this account.

There was no conflict in the evidence. It was, in substance: That in August and September, 1899, the plaintiff was soliciting insurance for the defendant in San Antonio and adjacent territory under a written agreement, introduced in evidence, and which provided for the rate of commissions, and further provided that no commissions allowed under the contract shall be payable to the plaintiff "unless the payment from which the same is to be allowed has been received in cash" by the defendant. That at the time there was stationed in San Antonio the 33d regiment of United States volunteers. That at that time the defendant had in force a book of printed instructions which authorized the plaintiff to insure those in the military and naval service at regular rates, plus $5 additional on the $1,000; but, to be certain about the matter, he sent to the defendant on August 17, 1899, a telegram asking upon what terms it would accept army officers, war risks, and upon the same day received a reply referring him to page 12. New Rate Circular, for army officers. This New Rate Circular was in the possession of the plaintiff, and upon page 12 it authorized the solicitors of defendant to insure those engaged in the military and naval service in times of war at regular rates, plus $5 additional, to cover the greater hazard. The plaintiff began on August 18, 1899, to solicit life insurance of the officers of the 33d regiment. employing an assistant, and solicited insurance upon the above terms. He procured applications from a number of them upon the regular blanks of the defendant, and, after the usual medical examination by the local physician, when the same were signed by the applicants, forwarded them to the home office of the defendant. The first of these applications

108 F.—47

were dated August 21st; the others, of later dates. All of them were procured and sent to the home office before the plaintiff knew of any change being made in the rates, the last ones being sent September 1st. After September 6th the plaintiff received notice by letter from the defendant of August 30th, saying, "Since writing you on August 17th, regarding the rate for army officers, the executive committee has decided that for officers engaged in actual service there will be an extra loading of $50 per thousand per annum, the same as was in force during the Spanish-American war," whereupon he solicited no more insurance upon the figures as first given. About September 15th he received policies from the defendant, written according to the applications. upon 10 of the applications, with instructions not to deliver them unless $50 additional per $1,000 was paid, instead of $5. as originally agreed upon. He saw the applicants, and they refused to take the policies at the additional rate. The defendant subsequently telegraphed him to return the policies, which he did, and he returned to several of the applicants the money which they had paid him in advance on the first premium. After the plaintiff had instituted this suit, he received from the defendant the policies on other applications sent in by him, which were written up in accordance with the applications. They were received about October 2d, and the policies were issued on the 27th. The plaintiff also received a letter from the defendant as follows:

"New York, Sept. 26th, 1899.

"George H. Currier, San Antonio, Texas—Dear Sir: Replying to your letter of September 13th and 14th, regarding the applications written up by you on the lives of army officials, I desire to state that I have delayed answering your communications in order to submit all the facts to the executive committee. Having done so, I am now in a position to advise you that all applications written up on the parties above referred to, and now in our hands, bearing date of September 5th, or prior to that date, will be treated, if otherwise acceptable, on the basis of my telegram of August 17th, and all applications now in our hands on the lives of such parties bearing date subsequent to September 5th will be treated in accordance with the order of the executive committee, which you state was received by you on September 5th. Trusting that our action in this matter, which is taken without prejudice, will meet with your approval, I remain,

"Yours, very truly,
"[Signed]                    ———, Chairman Agency Committee."

In the meantime the applicants, with their regiment, had left San Antonio about September 18th, and sailed from San Francisco for the Philippines about October 1st. When the policies were received, the applicants had gone, and were on their way to the Philippines. The policies were returned to the defendant in accordance with its instructions. and were never reissued or returned to the plaintiff. On cross-examination the plaintiff testified that he was satisfied that if the policies had been issued according to contract, during the time the applicants were at San Antonio, all of them would have been taken promptly; that they were anxious to get the insurance; that he was familiar with the rate book of the defendant, and knew its published rates in force, authorizing him to solicit insurance at the regular rate, plus $5. but he sent the telegram of August 17th to be certain about it. No premiums on any of the applications were ever paid or tendered to defendant by him, and he never delivered any of the policies to the applicants. The plaintiff also testified that he notified the defendant that the applicants expected to leave soon for the Philippines, and also notified it of the fact when they did leave. There was evidence that the average life of an insurance policy is about seven years. It was agreed upon the trial that all of the applicants mentioned were financially able to pay the premium at the rate upon which the plaintiff solicited their insurance, to wit, regular rates, with $5 additional for waiver of the war risk. Other correspondence between the parties was introduced in evidence by both sides, showing repeated refusal of the defendant to deliver the policies except at the increased rate, until this suit was brought, but which it is unnecessary to specifically set out here. The court instructed the jury to return a verdict for the defendant.

T. A. Fuller and R. L. Ball, for plaintiff in error.

E. H. Farrar, Thos. F. West, and Tilman Smith, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and TOULMIN, District Judge.

TOULMIN, District Judge, stating the case as above, delivered the opinion of the court.

We think the undisputed facts show that the plaintiff in error had done all that he undertook to do under the terms of his employment. He procured applications for insurance in accordance with his instructions and with the rules and regulations of the defendant in error, and forwarded them to the home office of the defendant in error for its action upon them. The applications were in due form, and it is to be presumed that the applicants were insurable risks, and that the risks were satisfactory to the defendant in error. No objection to them was pointed out, and the presumption is that none existed. The only objection made to delivering the policies was that the rate of premium on them was too low. The defendant in error decided, after some of the applications were made and received by it, to raise the premium. It had authorized the rate of premium agreed on, by the plaintiff in error, its agent, and the applicants. It had published the rates of premium in its rate circular, and had specially called the attention of the plaintiff in error to that fact when asked for advice on the subject. Were not the published rates of premium of the defendant in error a promise that it would insure at such rates, and, all prerequisites being complied with and satisfactory, that policies would be issued accordingly? Unquestionably, the defendant in error had a reserved right to reject the insurance for good reasons. But it cannot be justly urged that it reserved the right of arbitrarily refusing to deliver the policies when every prerequisite which it had itself prescribed had been complied with, and thus deprive the agent of compensation for the services rendered in procuring the applications. The defendant in error had proposed to insure at a particular rate. That rate had been agreed on, and the applications procured on that basis. Can it legally refuse to pay the agent his commissions, solely on the ground that it had decided to change its rate, and to charge a higher one, after he had performed the services required of him in procuring the insurance? We think not. We understand the rule of law to be that, while ordinarily an agent is not entitled to his commissions until the transaction is complete, yet, if he has faithfully performed his part of the transaction, and from no fault of his own, but by the refusal of the principal to complete the contract, it is not consummated, the agent will be entitled to his commissions. 4 Am. & Eng. Enc. Law (2d Ed.) 972. Mechem, in his work on Agency, says, "If it be found that an agent has done all that he undertook to do, his right to his compensation is complete, and he cannot be deprived of it because the principal has failed to avail himself of the benefit of the act, or refuses to do what he had agreed to do upon performance." Mechem, Ag. § 611. "An agent employed to sell property

earns his commission if he finds a purchaser who is able and ready to purchase on the terms directed, though the vendor changes his mind and refuses to sell." Story, Ag. § 329; Kock v. Emmerling, 22 How. 69, 16 L. Ed. 292. And "the principal cannot defeat the agent's claim by the refusing to sell at all, or only upon different terms." Mechem, Ag. § 612. "Thus, an agent who is employed to procure a loan for his principal is entitled to his commission when he procures a lender ready, willing, and able to lend the money upon the terms proposed. The principal cannot deprive the agent of his commission by refusing to accept the loan which the agent's efforts have resulted in securing." Mechem, Ag., supra. "The rights of an insurance agent, as regards his principal, are, in the main, governed by the rules of law applicable to agents in general. Where there is an express contract, it will govern." 16 Am. & Eng. Enc. Law (2d Ed.) 911.

The defendant in error contends that by its contract with the plaintiff in error it was expressly agreed that no commissions were to be paid to him "unless the payment from which the same is to be allowed has been received in cash by the association," the defendant in error. It is true that the agent may, by special agreement with his principal, so contract as to make his compensation dependent on a contingency. Under such contract, he will be entitled to compensation only on showing that the contingency has happened, or that performance was prevented through some fault or act of the principal. 1 Am. & Eng. Enc. Law (2d Ed.) 1096. "The contract will be conclusive unless it appears that the performance has been waived or prevented by the principal." Mechem, Ag. § 611. "An agent may be entitled to remuneration for his services, although he has not done the whole service or duty originally required. * * * This may arise from the entire performance being prevented by the act of the principal himself." Story, Ag. § 329, note 4. If, then, the right of the plaintiff in error to commissions was dependent on the receipt in cash by the defendant in error of the "payment" (premium) from which the commissions were to be allowed, and the receipt of such premium was prevented by the defendant in error, or if it was a part of the service or duty of the plaintiff in error under his contract to collect and pay over such premium to the defendant in error, and he was prevented from doing so by the defendant in error, he would be entitled to his compensation. The premium was not received by the defendant in error because it prevented the delivery of the policies on which it appears the premium would have been paid.

It is further contended that the right of the plaintiff in error to compensation on the face of his contract was based on "accepted business" solicited by him. The fact is, most of the business on which commissions are claimed was accepted. The policies on some of the applications were issued, but they were not delivered solely on the ground that the applicants refused to pay a higher rate of premium than they had agreed to pay, and higher than the defendant in error had authorized them to be insured for, at the time the applications were made; and it appears that the defendant in error

reconsidered its refusal to issue and deliver the policies on the basis of the rates originally published and authorized, and did issue and authorize some of them to be delivered on that basis. But this action of the defendant in error was so long delayed that the applicants had left for the Philippines, and the delivery of the policies by the plaintiff in error was rendered impracticable, and without his fault so far as is disclosed by the evidence.

Our opinion is that the plaintiff in error is entitled to commissions on all applications received prior to September 6th, and on which policies were issued, and that the circuit court was in error in directing a verdict for the defendant in error. The judgment is reversed, and the case remanded, with instructions to grant a new trial.