# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## JOHNSON, RECEIVER, V. BUTTON, COMMISSIONER, AND OTHERS.

### January 11, 1917.

Absent, Sims, J.
Absent, Prentis, J.*

1. INSURANCE—*Insolvency of Foreign Insurance Company.*—Where an insurance company, after writing numerous policies, becomes insolvent, it can not demand a return of a proportionate part of the commissions of its agents, on policies cancelled at the time of the receivership, there being no custom requiring the return of commissions as in case of surrender, and the company not being entitled to profit by its own default.

2. INSURANCE—*Insolvency.*—The insolvency of an insurance company *ipso facto* cancels its outstanding policies and entitles holders to "return premiums" upon the "pro rata" instead of upon the "short rate" basis.

3. INSURANCE—*Insolvency—General Agent.*—Upon the insolvency of an insurance company, premiums collected by the receiver from sub-agents may be turned over to the general agent, instead of being held to await a settlement between all parties, where the general agent had the appointment of the sub-agents and was personally liable to the company for any balances that might be due from the sub-agents within his territory, and was under bond for the faithful performance of his contract.

4. INSOLVENCY — *Jurisdiction — Settlement with General Agent.*— Upon the insolvency of a foreign insurance company, the proper place for a settlement between the company and its general agent for two States is in the suit in its home State for general liquidation of the company's business, and not in an ancillary proceeding in one of the other States.

5. INSURANCE—*Rights of General Agent.*—The general agent of an insurance company, to whom policy holders have assigned their policies, stands on the same plane with all other holders of Virginia policies canceled by the insolvency of the company, and is entitled to share with them the benefits of his statutory lien on the securities held by the treasurer.

---

* Submitted before Judge Prentis took his seat.

Appeal from a decree of the Circuit Court of the city of Richmond in an ancillary proceeding by the Commissioner of Insurance against a foreign insolvent company. From the decree, the receiver of the company appeals.

*Amended and Affirmed.*

The opinion states the case.

*Kelley & Coulbourn,* for the appellant.

*John B. Minor* and *J. Winston Read,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The American Union Fire Insurance Company, a Pennsylvania corporation, having complied with the statutory requirements, including the deposit of $25,000 of securities with the treasurer of the Commonwealth, was licensed to engage in the business of fire insurance in this State. To that end, on May 1, 1911, it appointed Sol Miller general agent for Virginia, which agency was subsequently extended so as to embrace the territory of West Virginia and include the business of the Monongahela Underwriters Agency.

In March, 1913, the State of Pennsylvania, in a proceeding at the relation of its insurance commissioner, procured a decree from the Court of Common Pleas of Dauphin county, in that State, determining the insolvency of the insurance company, and ordering its dissolution and liquidation of its business by the State Insurance Commissioner. By its terms the decree became effective March 27, 1913. On March 12, 1913, the Commonwealth of Virginia, at the relation of Joseph Button, Commissioner of Insurance, filed

an ancillary petition in the Circuit Court of the city of Richmond against the company, alleging its insolvency and reciting the receivership proceedings against it in the Pennsylvania court. The petition also charged that there were unadjusted and unsettled demands against the company for fire losses sustained by policy holders in this State, and prayed that it be required to show cause why the Commissioner of Insurance should not take possession of its assets therein and distribute the proceeds among those ascertained to be entitled thereto. A creditors' bill was likewise filed in the circuit court against the company, which prayed for similar relief; and the two proceedings were heard together.

The compensation of Miller was fixed by written contract at thirty-five per cent. commissions upon all policies written by him and his sub-agents in this State. Miller filed his petition in the proceedings, in which, adverting to the Pennsylvania receivership, he alleged that he "was advised that the appointment of said receiver *ipso facto* cancelled all the policies of said companies then outstanding; but in addition that he had been instructed by the proper officers of said receivership to discontinue writing business for said companies, and advised that all policies should be cancelled. Thereupon petitioner and his sub-agents took the necessary steps to cancel said policies, and return the proper proportion of the premiums to policy holders."

The company made no answer to this petition by demurrer or other pleading; and the court directed a reference to one of its commissioners. in chancery to inquire into the various matters involved in the subsidiary litigation.

With respect to the main contention of the general receiver, that the Virginia agents should be required to pay back unearned commissions on policies cancelled at the time of the receivership, the commissioner made the following finding: That after the receivership, these agents in order to protect their policy holders, issued new policies in other

companies for the unexpired terms of the old policies, which latter, in consideration of the new policies, were surrendered to the agents. The agents filed the old policies of which they held assignments and claimed the return premiums for the unexpired terms. And the commissioner was of opinion that they occupied the same position that the policy holders would have occupied if they had filed their policies direct; that the agents had performed their full duty to the companies in issuing policies, collecting premiums and delivering the policies to the insured, and that the failure of the companies was through no fault of theirs; and that their only reason for appearing in this litigation was to file their claims for unearned premiums on the policies held by them as assignees.

The commissioner's findings upon the principal questions referred to him were adverse to the company, and the general receiver appealed from a decree confirming his report.

The contention of appellant with respect to the agents' compensation is, that inasmuch as their commissions were based upon "net premiums," all claims for "return premiums" should be charged with their proportionate part of the commissions; and, furthermore, that as the policies had not been cancelled by the company, return premiums should be computed upon what is known as the "short rate" basis. The opposing theory of the agents conformed to the findings of the commissioner as approved by the circuit court.

The affidavits of representative agents of a number of fire insurance companies show that it is the custom and usage with such companies to construe the term "net premiums" in contracts similar to the one in question to mean that the general or local agent of the company should return the proper proportion of all premiums which had either been cancelled by the insured, or by the company while a going concern, without any neglect or default on the part of such company; but that where the company had

been placed in the hands of a receiver, and its policies cancelled without fault on the part of the agent, no obligation rested on such agent to return any part of the commissions received by him on premiums on policies so cancelled.

In 22 Cyc. 1440, the general rule is thus stated: "The rights of an agent to compensation as to cancelled policies must be determined according to the contract, express or implied, under which he is employed, and it may be competent to show the course of dealing between him and the company in order to fix his compensation. He is generally entitled to commissions on the whole premium paid, and cannot be limited to the portion earned up to the time of cancellation." Citing *Insurance Com.* v. *Peoples Fire Ins. Co.,* 68 N. H. 51, Atl. 82; *Garfield* v. *Rutland Ins. Co.,* 69 Vt. 549, 38 Atl. 235; *Am. Steam Boiler Ins. Co.* v. *Anderson,* 6 N. Y. Supp. 507.

And in 22 Cyc. p. 1404, it is said: "The insolvency of an insurance company constitutes a breach of contract on its part, and on dissolution of the company claims of policy holders are debts due *in praesenti.* * * * A company cannot recover premiums for the portion of the term of insurance after insolvency has taken place. Nor can it maintain an action against an agent for the recovery of premiums received by him, the consideration for which has thus failed. The insolvency of the company being a breach of its contract as to an existing policy holder, the latter is entitled to recover the portion of the premium paid which is unearned at the time of the insolvency, and this is so, even though there is no provision for refunding premiums paid."

These authorities hold that insolvency of the company *ipso facto* cancels its outstanding policies and entitles policy holders to "return premiums" upon the "*pro rata*" instead of upon the "short rate" basis, as contended by appellant.

The case of *Hay* v. *Union Fire Ins. Co. and the Monon-*

*gahela Underwriters Agency, &c.,* 167 N. C. 82, 83 S. E. 242, involved the same question with the same companies touching the effect of their insolvency upon the North Carolina business, and, therefore, is directly in point. The facts in the two cases are identical, and, upon a review of the authorities, the court holds: "When a fire company, after writing numerous policies, becomes insolvent, it could not demand a return of a proportionate part of the commissions paid the agents, there being no custom requiring such return of commissions as in case of surrender, and the company not being entitled to profit by its own default; hence no such deduction could be made from claims of policy holders for unearned premiums assigned to the agents."

The agent's claim to commissions rests upon the conclusive ground that he has fully complied with the terms of his employment, and the transaction fails of accomplishment from no fault of his, but from the insolvency of the company. See the well-reasoned case of *Currier* v. *Mut. Reserve Fund Life Association,* 108 Fed. 737, 47 C. C. A. (5th Cir.) 651, citing 4 Am. & Eng. Enc. Law (2nd ed.) 972; Story on Agency, sec. 329; Mechem on Agency, secs. 611, 612; 16 Am. & Eng. Enc. Law (2nd ed.) 911; *Knock* v. *Emmerling,* 22 How. 69, 16 L. Ed. 292.

An examination of the authorities relied on by appellant shows that some of them are to be distinguished from this case upon the facts, and that others have been overruled by subsequent decisions.

Upon the main question, it seems to us that the better reason and weight of authority are on the side of appellees.

The second assignment of error involves the action of the circuit court in decreeing that $911.31, collected by Receiver Johnson from sub-agents be turned over to the general agent, Miller, instead of being held to await a settlement between all parties; and also declining to direct settlements in this proceeding, without consent of parties, be-

tween Miller and his sub-agents, and between him and the companies.

We find no error in this ruling. Miller had the appointment of the sub-agents, and was personally liable to the companies for any balances that might be due from sub-agents within his territory, and was under bond in the penalty of $5,000 for the faithful performance of his contract. There is no suggestion of insolvency or inadequacy of the security given by Miller to meet any possible balance that might be ascertained to be due from him to his principal. The fund in question forms no part of the assets of the company, but is the property of Miller and was rightly decreed to him.

Nor was it error in the court, in exercising a limited statutory jurisdiction, to decline to decree a settlement between Miller and the companies. Such settlement necessarily would cover the transactions of the general agent both in Virginia and West Virginia, and the proper place for that settlement is the suit in Pennsylvania for general liquidation of the companies' business.

The third assignment of error challenges the ruling of the circuit court establishing Miller's lien upon the bonds deposited with the State treasurer for return premiums as assignee of certain policies; the contention being that Miller should only be allowed a lien for such balance as might be found due upon a settlement with the company as general agent on Virginia business.

What has already been said in the discussion of the second assignment of error to some extent applies to this assignment. With respect to policies held by Miller as assignee, he stands on the same plane with all the other holders of Virginia policies cancelled by the insolvency of the company, and is entitled to share with them the benefits of his statutory lien on the securities held by the treasurer. *Non constat* that upon a *general accounting* there will be any amount owing from Miller to the company. He has

43

given a solvent bond for the faithful performance of his contract, while the company admittedly is insolvent. In these circumstances, his lien should not be postponed, and perhaps jeopardized, to meet a possible liability.

It follows from the discussion of the last two assignments that the cross-error of appellees is well assigned, and that payment of the sum of $721.84, referred to therein, belonging to Miller, ought not to be withheld to await the result of the settlement between him and the company.

For these reasons, the decree must be amended in the particular indicated, and in all other respects will be affirmed.

*Amended and Affirmed.*