## FULLER -v. WRIGHT, insurance commissioner.

1. Upon the adjudication of insolvency of a domestic stock life-insurance company and the passing of an order of liquidation of its affairs on a petition filed by the insurance commissioner, the outstanding policies are ipso facto canceled, and a claim of loss thereafter occurring is not a provable claim by the beneficiary against the company.

2. A policy of insurance named the daughter of the insured as the beneficiary, and contained a clause, that, should the insured become totally and permanently disabled while the policy was in force, her premiums should cease and she should receive an annuity in monthly payments of a stated sum; provided, should she recover from such disability, the payments to her should cease and the amount paid to her should be charged against the policy as a loan. While the policy was in force the insured suffered an illness producing a total disability, and while in this condition the order of liquidation of the insurer as an insolvent company was passed. The insured continuously remained in a condition of total disability for more than a year after the passing of the order of liquidation, when she died. *Held*, that the beneficiary in the policy was not a creditor entitled to share in the distribution of the assets of the insolvent insurance company.

JUNE 13, 1917.

Intervention. Before Judge Bell. Fulton superior court. May 9, 1916.

The American Life Annuity Association, a Georgia corporation, on August 28, 1911, issued a policy of insurance upon the life of Mary E. Fuller for the sum of $5,000, and Lula J. Fuller, daughter of the insured, was designated as the beneficiary. The policy provided that on satisfactory proof of death of the insured $5,000 should be paid to the beneficiary in 100 monthly installments of $50 each; that should the insured attain the age of 78 years while the contract was in full force and effect she should receive the above-mentioned annuity under the same plan as provided for her beneficiary in the event of death, provided, however, that should the insured die before the sum of $5,000 should be paid, her beneficiary should in like manner receive the unpaid installments; that should the insured become totally and permanently disabled while the policy was in full force and effect her premiums should cease during such disability and she should receive said annuity in monthly payments of $25 each, provided that should she recover from such disability the payments to her should cease and the amount paid to her should be charged against the policy as a loan. The insurance company issued a second policy on the life of

Mary E. Fuller, on September 25, 1911, for $5,000 and the beneficiary named therein was described as the insured's son. In all other particulars this policy was in the same words and figures and contained the same provisions as the first policy, except that the clause providing for the payment of the annuity in the event that the member should become totally and permanently disabled was wholly omitted. This policy was later assigned to Lula J. Fuller by the beneficiary therein named. The insurance commissioner of Georgia filed a proceeding in the superior court of Fulton county to wind up and liquidate the affairs of the company under the act approved August 19, 1912, and an order of liquidation was granted on September 8, 1913. Lula J. Fuller filed an intervention in that proceeding, alleging that the insured suffered a stroke of paralysis on February 12, 1913, totally and permanently disabling the insured, and that she remained in this condition until her death, which occurred on January 5, 1915, and she claimed that she was entitled to participate in the distribution of the assets of the insolvent corporation. On the trial the evidence disclosed that the insured was stricken with paralysis five months before the insurance commissioner instituted proceedings to wind up and liquidate the insurance company, and that this stroke of paralysis totally and permanently disabled the insured; that from the time she was paralyzed she was confined to her bed in a semi-comatose condition and died on January 5, 1915, about eighteen months after the institution of the proceedings by the insurance commissioner, and more than fifteen months after the order of liquidation. The premiums on the policies were promptly paid at maturity from the date of the issuance of the policies until the liquidation of the company. Proof of disability and death were either complied with or waived. Annuity tables were introduced for the purpose of showing the value of the policies. The court rendered a judgment without the intervention of a jury, by consent of the parties, and in his judgment decreed that the policies were canceled by the order of liquidation, except as to the monthly payments that may have accrued under the policy issued on August 21, 1911, before the order of liquidation, but that such monthly payments do not belong to the beneficiary but to the personal representative of the insured, and that the intervenor is not

entitled to recover any sum upon her intervention. It is to this judgment that the intervenor excepts.

*J. L. Anderson, T. B. Felder,* and *Owens Johnson,* for plaintiff. *Walter McElreath,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

1. A life-insurance company, when adjudged insolvent and dissolved, has broken its engagements with its policyholders and becomes liable to them in damages for such breach. Commonwealth *v.* American Life Insurance Co., 162 Pa. St. 586 (29 Atl. 660, 42 Am. St. R. 844) ; Boston and Albany Railroad Co. *v.* Mercantile Trust and Deposit Co., 82 Md. 535 (34 Atl. 778, 38 L. R. A. 97). Upon such breach the policyholders become creditors for the value of their policies at the date of the dissolution of the company. People *v.* Security Life Insurance Co., 78 N. Y. 114 (34 Am. R. 522). The contract of the insurance company is with the insured, and the liability for the breach of an ordinary policy contract is to him, and not to the beneficiary, whose right is to receive the amount of the policy as a death claim. Upon the adjudication of insolvency of a domestic stock life insurance company and the passing of an order of liquidation of its affairs on a petition filed by the insurance commissioner, the outstanding policies are ipso facto canceled, and a claim of loss thereafter occurring is not a provable claim against the company. 14 R. C. L. 853. The death of the insured occurring subsequently to the order of liquidation, the beneficiary has no claim against the assets of the company.

2. But it is urged that the policy which contained the disability clause stands on a different footing with respect to the right of the beneficiary to share in the assets of the company; that the court should have treated this policy as having matured prior to the order of liquidation, because the insured was permanently and totally disabled at that time. In this case we are not concerned with the rights of the insured, as her claims are not pressed by her personal representative. It is the beneficiary named in the policy who is claiming to be a creditor of the insurance company. The argument is advanced that the insured had fully performed her contract; had fully paid all premiums due; was relieved by the contract from paying further premiums during her total disability; that she never recovered from a condition of total disability, and therefore the policy should be regarded as a death

claim as of the date when she suffered a total and permanent disability which resulted in death. One vital error in this argument is the confusion of the company's obligation to pay money as a disability claim and as a death claim. The contractual obligation to pay the disability claim is to the insured in life, and that to pay the loss as a death claim is to the beneficiary on the death of the insured. By the terms of the policy the company agreed (1) that in the event of the death of the insured, the company would pay to the beneficiary the sum of $5,000 in one hundred monthly installments of $50 each; (2) that should the insured attain the age of 78 years while the contract was in full force and effect, she should receive the above-mentioned annuity under the same plan as provided for her beneficiary in the event of death, provided that should the insured die before the sum of $5,000 should be paid, her beneficiary should in like manner receive the unpaid installments; and (3) that should the insured become totally and permanently disabled while the policy was in full force and effect, her premiums should cease during such disability and she should receive an annuity in monthly payments of $25 each, provided that should she recover from such disability the payments to her should cease and the amount paid to her should be charged against the policy as a loan. It is clear that the beneficiary only takes under the policy on the death of the insured. The monthly payments during disability of the insured belonged to her, and the amount of the beneficiary's claim under the policy as a death claim is reduced by payments to the insured on the disability feature of the policy, which is charged against the policy as in the nature of a loan. The beneficiary, therefore, at the time of the liquidation of the company had no matured right under the policy; her only right being to claim such amount under the policy on the death of the insured as by its terms was due as a death indemnity. The insolvency of the company and the order of liquidation took place before the insured died; and under the principle announced in the first division of this opinion, the policy became canceled on the happening of these events, and the rights of the beneficiary terminated.          *Judgment affirmed. All the Justices concur.*