STATE OF IOWA ex rel. BEN J. GIBSON, Attorney-general, Appellee, v. AMERICAN BONDING & CASUALTY COMPANY et al., Appellees; W. F. GRANDY, Receiver, Appellant.

OCTOBER 23, 1928.

*Burgess & Gill*, for appellant.

*McKinley & Killinger, E. G. Smith,* and *Shull, Stilwill, Shull & Wadden,* for appellee.

*Kass, Zink & Kass, Amici Curiae.*

FAVILLE, J.—The American Bonding & Casualty Company

was incorporated in this state on June 2, 1916, to transact business under Chapter 4, Title IX, of the Code of 1897, relating to insurance other than life. The authorized capital stock at the time of incorporation was $500,000. On January 25, 1918, a resolution was adopted, authorizing an increase of the capital stock to $1,000,000, and on January 19, 1920, amended articles of incorporation were adopted, fixing the capital stock at $750,000. On January 24, 1921, temporary receivers were appointed for said company, and subsequently, a permanent receiver was appointed. Policies issued by said corporation provided indemnity for personal injuries caused by accidental means, for loss of time caused by sickness; and said company also issued what are known in the record as "surety bonds," "plate glass policies," "burglary policies," "fidelity bonds," "automobile liability and property damage policies," and "landlord's or tenant's public liability policies." It appears that, at the time of the appointment of the temporary receiver, there were on deposit with the insurance department of the state of Iowa capital assets consisting of mortgage loan securities in the amount of $703,250, and that all of said assets were delivered by the commissioner of insurance to the receiver of said corporation. Regarding said securities it is stipulated and agreed "that the securities on deposit with the commissioner of insurance of the state of Iowa were so deposited with said commissioner under his ruling requiring said company to deposit with said commissioner of insurance of the state of Iowa the said capital assets of said company before the original license to do business would be granted to said company, and that said capital assets, as invested in bonds and first mortgage securities, were so deposited with said commissioner of insurance, in compliance with his demands, and that the securities so turned over to W. F. Grandy, as receiver of the A. B. & C. Co., on February 8, 1922, were securities so deposited with the commissioner of insurance in compliance with his demands, and on his ruling that said capital assets be deposited with said commissioner of insurance before licensing said company, for the protection of policyholders of said company, in accordance with his interpretation of the law."

At the time of the organization of said corporation, and at the time that said securities were so deposited with the com-

missioner of insurance, there was no statute in this state requiring that a corporation engaged in the business in which said corporation was engaged should make a deposit of securities with the commissioner of insurance. The appellee's claim in this case, amounting to $45,514.85, is for unearned premiums on certain policies of said company that were outstanding at the time of the appointment of receivers for said corporation. It is admitted that the policies, bonds, and contracts on which the appellee's claim for return of unearned premiums is based are written on the standard form of policy provided by the statutes of this state.

The fund did not lose its trust character because it was deposited with the commissioner of insurance under an evidently mistaken belief on the part of the commissioner, and also the company, that such deposit was required. The stipulation of the parties is that the securities were deposited with the commissioner "under his ruling requiring said company to deposit with said commissioner of insurance of the state of Iowa the said capital assets of said company before the original license to do business would be granted to said company," and that said deposit was in compliance with his demand and his ruling for the protection of the policyholders of said company, in accordance with his interpretation of the law. There is no allegation of fraud or duress. The fact that the deposit was made by reason of a misapprehension of the statute, and the belief on the part of the parties that it was essential, did not deprive the deposit of its trust character, or change the terms under which it was deposited,—namely, "for the protection of policyholders."

I. The trial court held that the securities deposited with the commissioner of insurance constituted a trust fund which passed into the hands of the receiver, and that the appellee, as the holder of claims for unearned premiums, was entitled to have its claim established, as against said fund. While the securities deposited with the commissioner of insurance were not deposited in pursuance of any statute of this state requiring the deposit to be made, they were deposited in pursuance of a demand by the commissioner of insurance, and, under the stipulation, were so deposited "for the protection of policyholders of said company." Even though the deposit of said securities was not required by law, the deposit was made by the corpora-

992

tion as a segregation of certain of its assets for a particular purpose,—to wit, "the protection of its policyholders." This was not an illegal act on its part, and did not contravene the public policy of the state with regard to certain other insurance companies, and, in fact, was in keeping with it. The corporation had a legal right to set apart said securities in the hands of the insurance commissioner, or some other trustee, as a trust fund "for the protection of its policyholders." It matters not whether the commissioner of insurance thereafter held the same as a public official or as a private individual. No question is raised of his right to act as the custodian or trustee of such a fund, and we see no legal objection to the creation of such a trust fund in his hands for a particular lawful purpose. A similar situation existed in *American Cas. Ins. Co.'s Case*, 82 Md. 535 (34 Atl. 778, 38 L. R. A. 97). In said case, as in the one at bar, a deposit of securities was made with a state official, as a guarantee for the payment of the policies of insurance issued by the company making the deposit. Such a deposit was not required, under the statutes of that state. The court said:

"We need not stop to consider whether the deposit in this case was made by the company under the impression that it was a statutory requirement, or whether it was made voluntarily, with a view to strengthen its credit, and to give confidence to its policyholders of its ability to meet its obligations. The fact is, the company did make the deposit * * * ."

If a trust existed, and was created by the act of the company, it will not be defeated because of any inability or want of authority on the part of the trustee to act. It is elementary that a court of equity will not allow a trust to fail for want of a trustee. In any event, the fund was held by the commissioner of insurance as a trustee, and was surrendered by him to the receiver appointed by the court, and is now in the custody of the court. We treat the fund, therefore, in the hands of the receiver as being a trust fund created by the corporation "for the protection of the policyholders of said company."

II. Our inquiry then becomes one as to whether or not the appellee, as the holder of a claim for unearned premiums, is entitled to have said claim established as against said trust fund;

or, in other words, was the trust fund created for the protection of the appellee, as a policyholder in said company? Does appellee's claim for unearned premiums accrue to him "as a policyholder," entitling him to. "protection" under the stipulated terms of the trust? We therefore first ascertain whether or not the unearned premiums are provided for in the policy of the appellant company, or by the statutes of the state, so that they come within the terms under which the securities were deposited, and entitled appellee to recover therefor as a policyholder. It is stipulated that the policies involved in this action were all written upon the standard form provided by the statute of this state. The statute then in force respecting policies of companies other than life insurance contained a provision which required the policy to have embodied in it the following clause (Code Supplement, 1913, Section 1758-b XI):

"This policy shall be canceled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation either by registered letter directed to the insured at his last known address, or by personal written notice. If this policy shall be canceled as hereinbefore provided, or becomes void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rates; except that when this policy is canceled by this company by giving notice it shall retain only the pro rate premium."

The policies issued by the corporation, in accordance with the statute above quoted, provided that:

"If this policy shall be canceled as hereinbefore provided or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary. short rates."

The trial court also found, and it appears to be established by the record, that, on the appointment of the permanent receiver, by. order of court, the policies, bonds, and contracts of said corporation were "canceled," as of the date of the appoint-

ment of the permanent receiver. Appellant concedes in argument that:

"The appointment of the permanent receiver on the ground of the insolvency of the company. *ipso facto*, as a matter of law, canceled the corporation's contracts and policies."

See 22 Cyc. 1404.

The statute provides for a "cancellation" of the policy by either the insured or the company. It also expressly provides for a contingency where the policy "becomes void," or shall "cease." The same result follows in either case, under the express terms of the policy. If it is "canceled," or "becomes void," or shall "cease," "the premium having been actually paid, the unearned portion shall be returned" to the policyholder. This provision of the policy was a part of the contract between the company and its policyholders. Whether or not it should be held that, under the statute, there was a "cancellation," according to the terms of the policy, it is conceded that the policy *was* "canceled" by the insolvency of the company and the appointment of the receiver. Furthermore, in any event, the policy did "become void," and did "cease." It makes no difference, in legal effect, whether the policy was legally "canceled," or whether it became "void" and "ceased." The provisions of the policy meet each of these contingencies. The condition of the policy is that, in either situation, the unearned portion of the premium "shall be returned" to the policyholder. The deposit of the securities of the corporation with the commissioner of insurance, it is stipulated, was a deposit for "the protection of the policyholders." It must be held that it was for the protection of the policyholders in all of the terms and conditions of the policy. One of these terms and conditions was the payment of the amount specified in the event of loss. Another term and condition was that, if the policy should be canceled, or should become void or cease, then the unearned premium should be returned to the policyholder. It is undoubtedly true that the company, in depositing its securities with a trustee, could have limited the terms and provisions and the purposes of the trust created. It could have limited it to the protection of policyholders as to any loss they might incur under the policies, or it could have limited it for the benefit of policyholders as to

the unearned premiums; but, under the stipulation of facts in this case, it did neither one. It is stipulated that the deposit was for the broad and general purpose of being "for the protection of policyholders." This being true, it must be regarded as having been for the protection of policyholders in all matters covered by the terms and conditions of the policy, one of which was for the return of unearned premiums under certain conditions.

III. It is urged that the unearned premiums are provided for by statute to be kept by the corporation in a separate fund, and that appellee must have recourse to such fund.

Code of 1897, Section 1702 (see Code of 1927, Sections 8937–8939) provides:

"The directors or managers of a stock company incorporated under the laws of this state shall make no dividends, except from the profits arising from their business; and in estimating  such profits there shall be reserved therefrom a sum equal to forty per cent of the amount received as premiums on unexpired risks and policies, which amount so reserved shall be unearned premiums; and there shall also be reserved all sums due the corporation on bonds and mortgages, bonds, stocks, and book account, of which no part of the principal or interest thereon has been paid during the year preceding such estimate of profits, and upon which suit for foreclosure or collection has not been commenced, or which, after judgment has been obtained thereon, shall have remained more than two years unsatisfied, and on which interest has not been paid; and such judgment with the interest due or accrued thereon and remaining unpaid, shall also be reserved. Any dividend made contrary to these provisions shall subject the company making it to forfeiture of its franchise."

The stipulation of facts recites:

"It is further stipulated and agreed that the said A. B. & C. Co. never earned any profits, and never had any net earnings, and never paid any dividends to its stockholders. The said A. B. & C. Co. did not keep in its unearned premium account, separate from its other funds, any moneys or securities whatsoever; but it did set up on its books a 40% premium re-

serve, under the method of bookkeeping prescribed by the insurance department of Iowa. This was simply a bookkeeping entry, however, and because of the fact that the losses on each and every class of insurance written by said company exceeded its gross receipts from premiums, and the entire premiums were absorbed by the payment of losses and expenses of operation of the company, almost as soon as received, there were never sufficient funds or assets in the hands of the company, aside from its assets deposited with the insurance department at Des Moines, Iowa, to equal the premium reserve so set up on its books. The books of the company, as so kept, were at all times subject to examination by the insurance department, and were examined at regular intervals.''

The above provision of the statute, under the facts stipulated, is not a limitation upon the right of the claimant, as a policyholder, to resort to the trust fund which was created ''for the protection of policyholders.'' There was no reserve fund created by this corporation for the payment of unearned premiums. Under the record, no profits were made, no dividends were declared, and no fund was created out of which unearned premiums could be paid. The statute, under the record and the facts in this case, furnishes no bar to the claimant's right to resort to the trust fund which was created by the deposit of securities under the broad and comprehensive statement that they were to be ''for the protection of policyholders.''

IV. Again, it is contended that the deposit of securities was solely for the protection of policyholders who suffered loss, and were entitled to indemnity under the policy. The deposit of  securities was not so limited. The purpose was not so circumscribed. It was ''for the protection of policyholders.'' It was in no way limited to *losses* that might occur under policies. The right to recover the unearned premium was as much a right, under the policy, as the right to recover indemnity for loss incurred. In one event, the policyholder would recover, under the terms of the policy, for a loss; in another event, he would recover, *under the terms of the policy*, for the unearned premium. He would recover either ''as a policyholder,'' under the express terms of the written contract between the parties.

V. It is also contended that, after the appointment of the

receiver, the appellee was no longer a "policyholder," and hence could not claim unearned premiums, as such. He was not a policyholder in the sense that the policy remained in force for the purpose of protection against future loss thereunder, but he was a policyholder as to all rights which had then accrued to him under the policy. That is exactly what the appellee is claiming here: namely, one of the rights which were secured to him under the terms of the policy, and which accrued to him by the very terms of the contract. After the appointment of the receiver, the appellee was still a policyholder, to the extent of the rights that accrued to him as such at that time. One who suffers a loss under a policy of insurance does not cease to be a "policyholder" for the purpose of recovering for the loss under the policy, although, in a sense, it may be said that the policy has "ceased."

VI. Again, it is urged that appellee's claim is, in reality, only a claim for damages for the breach of the contract by its legal termination, and hence appellee cannot recover as a policyholder. Appellee's claim is for the specific thing provided for in the contract: to wit, the unearned premium which it was agreed should be repaid to him. He is asking for the enforcement of the contract according to its terms, in an amount expressly fixed by the contract. Appellee paid a premium in advance for insurance for an extended term. The policy has ceased before the expiration of that term. Under the contract, the unearned premium for the balance of the term is to be repaid to the appellee. He has received nothing therefor. His claim is strictly under the express provisions of the contract.

Holding, as we do, that the fund in question was not illegally created, and that it was established by the corporation as a trust fund, for the express purpose of being "for the protection of policyholders," and the policies held by the appellee containing the express provision that, in the event that the policies were canceled, or became void or ceased, the unearned premium should be paid to the policyholder by the company, it follows, under the record in this case, that the appellee, as such policyholder, is entitled to have his claim established, as against the

particular fund now in the hands of the receiver, and which was delivered to him by the commissioner of insurance.

No other provisions of the decree of the trial court are challenged on this appeal, and, for the reasons pointed out, it must be, and it is,—Affirmed.

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.