(139 So. 1)

FEDERICO MACARONI MFG. CO. v.
GREAT WESTERN FIRE INS.
CO. et al.

No. 30925.

Nov. 30, 1931.

Rehearing Denied Jan. 4, 1932.

Denegre, Leovy & Chaffe, of New Orleans, for appellant American Surety Co.

Delvaille H. Theard, of New Orleans, for appellee.

O'NEILL, C. J.

The Great Western Fire Insurance Company and the Marquette National Fire Insurance Company, both corporations being organized under the laws of Illinois and domiciled in Chicago, and being qualified and authorized to do business in Louisiana, issued a fire insurance policy to the Federico Macaroni Manufacturing Company, for $5,000, on the company's macaroni factory in New Orleans, on the 9th of July, 1924, for the term of three years. The policy was written and delivered by an agent of the insurance companies in New Orleans. Each company had filed a so-called qualification bond, of $20,000, with the state treasurer, as re-

quired of foreign insurance companies, by Act No. 172 of 1908, p. 232; and the bonds were signed by the American Surety Company of New York, as surety. The condition or obligation of the bond was, according to the statute, "for the prompt payment of all claims arising and accruing to any person during the term of said bond by virtue of any policy issued by any such corporation upon * * * any property situated in this State." Section 1.

The Great Western and the Marquette National Fire Insurance Company were consolidated, by a merger of the Great Western into the Marquette National Fire Insurance Company, on or about the 15th of May, 1925, according to the laws of Illinois.

The Marquette National Fire Insurance Company afterwards became insolvent, and, on the 4th of April, 1927, in a proceeding brought by the director of the department of trade and commerce of the state of Illinois against the company, in the superior court of Cook county, in Chicago, a decree was rendered, declaring the corporation insolvent, appointing the director of the department of trade and commerce. ex officio liquidator of the affairs of the corporation, enjoining the corporation and its officers, as such, from transacting any business, and enjoining all persons, firms, and corporations from bringing or prosecuting any suit or proceeding at law or in equity against the corporation.

The Federico Company's factory was partly destroyed by fire on the 1st of June, 1927, during the term of the policy; and, according to the adjustment of the loss, the proportion thereof to be borne by the Marquette National Fire Insurance Company was $2,543.54.

None of the officers, members or agents of the Federico Company, was aware of the insolvency of the Marquette National Fire Insurance Company, or of the insolvency proceedings against the company, until some time after the fire. In fact no attempt had been made by the liquidator, or by any officer or agent of the insurance company, or by any officer or agent of the American Surety Company, or by any one else, for that matter, to notify the Federico Company of the insolvency of the insurance company.

The Federico Company therefore brought this suit against the Great Western Fire Insurance Company, the Marquette National Fire Insurance Company, and the American Surety Company, by service upon the secretary of state, and prayed for judgment against the three defendants in solido for the sum of $2,543.54, with legal interest and the statutory penalties. The insurance companies made no appearance, and judgment went against them by default. The surety company pleaded that the policy of insurance was terminated by effect of the decree rendered by the superior court of Cook county, Ill., declaring the Marquette National Fire Insurance Company insolvent and appointing a liquidator to take charge of and settle its affairs, and that the Federico Company therefore was entitled only to the unearned part of the premium, to be determined as of the date of appointment of the liquidator. The Federico Company then pleaded that, inasmuch as the insurance policy contained the usual clause requiring notice to effect a cancellation, and inasmuch as the decree of the Illinois court could not affect the rights of a resident of Louisiana, who was not a party to the proceedings in the Illinois court, and who was not even notified of the proceedings, it would be violative of the Fourteeenth Amendment of the Constitution of the United States, in that it would impair the obligation of a contract and take the Federico Company's property without due process of law, if the court should

hold that the decree of the Illinois court had the effect of canceling or annulling the insurance policy held by the Federico Company. The civil district court gave judgment for the Federico Company, as prayed for, against the three defendants in solido. The American Surety Company alone has appealed.

The appellant relies upon the general rule stated by Mr. Joyce in The Law of Insurance (2d Ed.) vol. 3, § 1454, pp. 2652, 2653, viz.:

"It is held that the fact of insolvency of the company does not of itself make the policy void. But the appointment of a receiver operates as a cancellation of the policy, and the contract of insurance is terminated, as to liability for future losses, by the insolvency and dissolution of the company, or after injunction or sequestration. There is, in such case, a damage to the policy holder to the value of the policy at the time of dissolution; or in case of death under life contracts after insolvency, but before presentment of proofs, to the full value of the policy, although it is held in a fire insurance case that the rights of the policy holder are fixed from the date of a voluntary assignment."

The rule is stated in 32 C. J. pp. 339, 340, §§ 102, 103, as far as is applicable here, thus:

"While there is authority to the contrary, the generally recognized rule is that a decree of dissolution or an adjudication of insolvency, coupled with the appointment of a receiver, cancels or terminates outstanding policies by operation of law, and subsequent losses under such policies are not liabilities which may be enforced against the receiver. * * * Holders of policies on which premiums have been paid for a term extending beyond the insolvency or dissolution of the company have valid claims for unearned premiums, and this is so even though there is no provision in the policy for refunding premiums paid."

The rule is stated in 14 R. C. L. 853, § 20, substantially the same, viz.:

"While there are some contrary decisions, the weight of authority supports the proposition that, on the judicial adjudication of the insolvency of a stock insurance company and the appointment of a receiver, the outstanding policies of the company are ipso facto canceled, and that a claim for a loss thereafter occurring is not a provable claim against the company. The policy holders are creditors for the value of their policies at the time of the breach thus occurring, which in most cases is the pro rata return premium," etc.

The doctrine stated was recognized by this court in Michel, Secretary of State, v. Southern Insurance Co., 128 La. 562, 54 So. 1010, and by the courts of other states in the following cases, cited in appellant's brief, viz.: Moren v. Ohio Valley Fire & Marine Insurance Company's Receiver, by the Court of Appeals of Kentucky, 224 Ky. 643, 6 S.W.(2d) 1091; Doane v. Millville Mutual Marine & Fire Insurance Co., by the Court of Chancery of New Jersey, 43 N. J. Eq. 522, 11 A. 739; People v. Commercial Alliance Life Insurance Co., 154 N. Y. 95, 47 N. E. 968; In re Equitable Reserved Fund Life Association, 131 N. Y. 354, 30 N. E. 114; People ex rel. Attorney General v. Life & Reserve Association, 150 N. Y. 94, 45 N. E. 8; Commonwealth ex rel. Attorney General v. American Life Insurance Company, by the Supreme Court of Pennsylvania, 162 Pa. 586, 29 A. 660; People v. Metropolitan Surety Co., 205 N. Y. 135, 98 N. E. 412, Ann. Cas. 1913D, 1180; Fogg v. Supreme Lodge of United Order of Golden Lion, 159 Mass. 9, 33 N. E. 692; Burdon v. Massachusetts Safety Fund Association, 147 Mass. 360, 17 N. E. 874, 1 L. R. A. 146; Boston & A. R. Co. v. Mercantile Trust & Deposit Co., by the Court of Appeals of Maryland, 82 Md. 535; 34 A. 778; Todd v. German-American Insur-

911

ance Co., 2 Ga. App. 789, 59 S. E. 94; Fuller v. Wright, Insurance Commissioner, 147 Ga. 70, 92 S. E. 873, L. R. A. 1917E, 1139; Johnson v. Button, Insurance Commissioner, 120 Va. 339, 91 S. E. 151; Lucas v. Pittsburgh Life & Trust Co., by the Supreme Court of Appeals of Virginia, 137 Va. 255, 119 S. E. 109; State ex rel. Gibson v. American Bonding Co., by the Supreme Court of Iowa, 206 Iowa, 988, 221 N. W. 585.

 Counsel for the Federico Company contend, however—and we have concluded that the judge who tried this case was right in sustaining the contention—that the general rule that a judicial decree appointing a receiver or liquidator for an insolvent insurance company terminates the outstanding insurance policies is not applicable to a case where the court that rendered the decree had not jurisdiction over the person of the policyholder, and especially where the latter had no notice of the decree, and hence no opportunity to protect himself by obtaining other insurance. One of the decisions cited by counsel for the American Surety Company, Evans v. Illinois Surety Co., 319 Ill. 105, 149 N. E. 802, is in accord with that proposition. The insolvency proceeding in that case was before the Supreme Court of Illinois twice. On the first appeal, Evans v. Illinois Surety Co., 298 Ill. 101, 131 N. E. 262, it was held that the obligation of the surety company on a bond in force when the receiver was appointed was not thereby canceled, and that, the bond being thereafter breached during its term, the amount of the obligation should be allowed. The decision, however, was based upon statutory provisions (sections 10 and 12 of General Incorporation Act and Insurance Dissolution Act) which apparently were not in force when the second appeal in the case came before the court. There (319 Ill. 105, 149 N. E. 802) it was held that, where a creditor sued the insolvent surety company in New York for damages arising out of a contract entered into while the company was doing business in New York, and obtained a judgment by default after the appointment of the receiver in Illinois, and after the creditor was notified that he should file his claim and that the receiver was prohibited from defending a foreign lawsuit, the judgment so obtained by default was valid, and entitled to full faith and credit under the Constitution of the United States, as far as the plaintiff and the insolvent corporation were concerned, notwithstanding the full faith and credit clause had no application to the receiver because he was not a party to the action and was not bound by the judgment rendered by the New York court. Applying the principle of that case to this, the judgment appealed from is a valid judgment as far as the plaintiff, Federico Company, and the defendants Marquette National Fire Insurance Company and American Surety Company are concerned, notwithstanding the judgment cannot affect the receiver representing the insolvent insurance company in Illinois. The reason for that is that the receiver, appointed in Illinois, was not a necessary party to a suit brought in Louisiana against the Illinois corporation, on a contract made in Louisiana while the corporation was doing business in this state and was subject to the jurisdiction of the courts of this state.

In Equitable Surety Co. v. Illinois Surety Co. and U. S. Fidelity & Guaranty Co., 108 S. C. 364, 94 S. E. 882, the suit was founded upon a bond given by the surety company in obedience to a statute of South Carolina (section 2701 of the Civil Code) very similar to the Louisiana statute, Act No. 172 of 1908; and, maintaining that the receiver representing the defunct surety company in Illinois was not a necessary party to the suit, the Supreme Court of South Carolina said:

"An Illinois surety company, in filing its bond with the insurance commissioner, with another foreign guaranty company as surety, complied with the law authorizing it to do business in the state, and such business continued as long as it had outstanding policies in the state, and until all claims against it had been settled, and service of process on the company was sufficient, though it was insolvent and had a receiver in another state.

"In suit in South Carolina against a foreign surety company authorized to do business in the state, the receiver appointed for it in another state is not a necessary party."

The court cited Pollock v. Association, 48 S. C. 74, 25 S. E. 977, 59 Am. St. Rep. 695, and Frink v. National Mutual Fire Insurance Co., 90 S. C. 544, 74 S. E. 33, 35, Ann. Cas. 1913D, 221. Frink's suit was brought to recover for a loss by fire, under an insurance policy issued by the National Mutual Fire Insurance Company, a Nebraska corporation, which had complied with the statutory requirements for the privilege of doing business in South Carolina. The insurance company was adjudged insolvent, and a receiver was appointed by a decree rendered by a Nebraska court, fourteen months before the fire occurred, but the policyholder in South Carolina was not informed of the insolvency of the corporation or of the appointment of the receiver. Deciding in favor of the policyholder, the Supreme Court of South Carolina said:

"The defendant had or ought to have had knowledge of the residence of every policy holder, and could have tried, at least, to have given notice to every policy holder so that other insurance could have been secured. Here the order and notice required the claims to be filed in Omaha, Neb. It may be that, if legal notice had been given the policy holder of the dissolution of the corporation

before the loss occurred, that would have operated to cancel the policy, and limit the claim of the insured to the unearned premium. But in this case the order of dissolution did not provide for notice to the policy holder, and there is no allegation in the answer that any notice was actually received by him, or that constructive notice was given in accordance with any law of Nebraska or of this state. The laws of South Carolina provide the means of procuring payment of established claims of its citizens in this state, and, until that fund is exhausted, the citizen of this state is not required to go to a distant state. If this were not the law, then see the anomalous condition. The state of South Carolina has the right to make conditions upon which a foreign corporation may do business in this state. One of the conditions in abundant courtesy is that a foreign corporation may do business with our citizens upon filing a bond with surety for the protection of the citizens of this state. When the fund is most needed (the corporation insolvent), the whole matter is taken away, and the insolvency of the principal discharges the surety."

It seems, therefore, that the question in this case is—as it is in all such cases—largely a matter of construction of the statute under which the bond was given by the foreign insurance company to protect the citizens of this state against a failure of the corporation to meet such obligations as it might incur in the exercise of its privilege to do business in the state. The condition of the bond required by Act No. 172 of 1908 is, as we have pointed out, that the insurance company, or the surety on its bond, shall promptly pay all claims arising and accruing to any person during the term of the bond *by virtue of any insurance policy upon any property in this state.* It is true that the decisions which support the general rule relied upon

by the surety company in this case maintain that a claim for a loss occurring after the insurance company has been judicially declared insolvent is a claim for *breach* of the contract of insurance; the insolvency of the corporation and the consequent termination of the policy being deemed a *breach* of the contract. But that is not a denial that the claim in such a case arises *by virtue of the insurance policy.* Hence there is no sound reason why, in such a case, the liability of the surety on the insurance company's bond should not be for the amount which the insurance company would have to pay if it were solvent. It is true, according to the weight of authority, that the liability of the receiver or liquidator of an insolvent insurance company, to the policyholders, is limited to the value of each policy at the date of the decree of insolvency; and the value of a fire insurance policy, in such cases, is the unearned part of the premium returnable to the policyholder. But the liability of the insurance company itself, and of the surety on its bond, given in obedience to the statute on the subject, must not be confused with the liability of the receiver or liquidator of the company after it has become insolvent.

In Federal Union Surety Co. v. Flemister, 95 Ark. 389, 130 S. W. 574, 578, the National Mutual Fire Insurance Company, of Omaha, Neb., had given a bond under the same condition as the bond in the present case, with the Federal Union Surety Company as surety, for the privilege of doing business in Arkansas. The insurance company was adjudged insolvent and a general receiver was appointed by a decree of a state court in Omaha; and afterwards a receiver was appointed by an Arkansas court to collect from the surety on the bond and distribute the fund among the policyholders in Arkansas. The court sustained the claim of a policyholder, W. H. Cajul, for a loss that occurred after the appointment of the receiver. The ruling was founded upon the theory that the Arkansas court had not dissolved the corporation, but had merely appointed a receiver to collect the assets of the corporation in the state and to make a distribution thereof among the creditors entitled thereto under the statutes of Arkansas. The court said: "At the time Cajul's property was destroyed by fire, his policy had not been ordered canceled, and his claim was provable against the estate of the insurance company. Hence the Federal Union Surety Company was liable."

In Insurance Commissioner v. People's Fire Insurance Co., 68 N. H. 51, 44 A. 82, the Supreme Court of New Hampshire went so far as to hold that the appointment of a receiver in New Hampshire to wind up the affairs of the insolvent corporation did not have the effect of canceling the outstanding policies. The court said that the objection that, in that view of the rights of the policyholders, no distribution of the assets could be made until all of the policies had expired, did not seem to be important, because the receiver might terminate all policies by giving notice, as provided in the policy contract. That decision, however, is not in accord with the majority of the decisions on the subject, or the rule generally recognized.

The doctrine controlling the present case is that a decree of a state court in an insolvency proceeding cannot discharge or affect an obligation which the insolvent owes to a nonresident creditor who has not voluntarily become a party to the proceeding. Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606; Gilman v. Lockwood, 4 Wall. (71 U. S.) 409, 18 L. Ed. 432; Crapo v. Kelly, 16 Wall. (83 U. S.) 610, 21 L. Ed. 430; Denny v. Bennett, 128 U. S. 497, 9 S. Ct. 134, 32 L. Ed. 494; 14 R. C. L. 635, § 9; 23 R. C. L. 140, § 149; Murray v. Roberts, 150 Mass. 353, 23 N. E. 208, 6 L. R. A.

346, and note in 15 Am. St. Rep. 212. It will not do to say that there was no obligation due by the Marquette National Fire Insurance Company to the Federico Company under the insurance policy at the time when the liquidator was appointed by the Illinois court. The insurance company was under obligation to protect the Federico Company, to the extent of $5,000, against loss by fire, so long as the insurance company did not see fit to notify the Federico Company of an intention to cancel the policy and give the Federico Company the opportunity to obtain such protection elsewhere. That obligation was as well entitled to the protection of the law as an unconditional obligation to pay a debt. It was not discharged by the insolvency of the insurance company, and could not be discharged by effect of the decree of the Illinois court, for want of extraterritorial jurisdiction on the part of the court.

We do not find anything in conflict with this view in any of the decisions cited by counsel for the American Surety Company. For example, in Michel, Secretary of State, v. Southern Insurance Company, 128 La. 562, 54 So. 1010, the Tyler Canning & Pickling Company, a policyholder domiciled in Texas, whose loss occurred after the secretary of state had had a receiver appointed to wind up the affairs of the insolvent insurance company in Louisiana, intervened in the insolvency proceeding in the Louisiana court, and, as the report of the decision shows, "prayed [for] judgment against the receiver." If the policyholder, in that case, had proceeded against the insurance company in Texas, under a statute giving the Texas court jurisdiction over the insurance company doing business in Texas, and under a statute requiring the insurance company to give a bond or to deposit securities to protect the policyholders in Texas, the Texas court could and should,

and undoubtedly would, have given judgment in favor of the policy holder.

In Moren v. Ohio Valley Fire & Marine Insurance Company's Receiver, decided by the Court of Appeals of Kentucky, 224 Ky. 643, 6 S.W.(2d) 1091, and cited by appellant, the insurance company was declared insolvent and a receiver was appointed at the instance of the insurance commissioner, under section 753 of Kentucky Statutes, which required the commissioner, in case of such proceedings, to notify immediately the general agents of the company, of its suspension, and required the agents to immediately notify all persons for whom they had written policies of insurance. The penalty for a failure so to do was a fine not less than $50 or more than $100. The opinion leaves the inference that the notices were given to the policyholders. Moren, who was a general agent of the company, took up the policies in two counties, about 400 policies, at the request of the insurance commissioner, and paid to each policyholder the unearned premium, either in cash or in reinsurance. He paid out in that way $3,450.44, for which he claimed reimbursement, and claimed a preference over other creditors. The receiver objected to allowing the commissions which Moren had earned on the new policies, amounting to $896.10, and objected to recognizing Moren's claim as a preferred claim. The circuit court allowed Moren's claim in full, but refused to adjudge it a preference claim; and the judgment was affirmed by the Court of Appeals of Kentucky. The decision is not appropriate here.

In Doane v. Millville Mutual Marine & Fire Insurance Company, 43 N. J. Eq. 522, 11 A. 739, 743, decided by the Court of Chancery of New Jersey, it was held that a policyholder whose loss had occurred after the appointment of a receiver for the insolvent company was not entitled to share in the distribution of the

assets; but the important fact was that he had notice of the appointment of the receiver and had ample opportunity to obtain other insurance. The court said:

· "He had it in his power to provide against the contingency which involved him in the loss he sustained, and which he now seeks to recover of this company. He could have secured other insurance, and, by the insolvency of this company, was warned so to do if he expected relief from such disaster. Mayer v. Attorney General, 32 N. J. Eq. 815; Dean's Appeal, 98 Pa. 101; Com. v. Insurance Co., 119 Mass. 45."

In Re Equitable Reserve Fund Life Association, 131 N. Y. 354, 30 N. E. 114, where the company was dissolved at the suit of the Attorney General, the only question presented was whether death claims should be paid entirely out of the death fund or might share in what was called the reserve fund. It was in that connection that the Court of Appeals of New York said that the holders of death claims should have their claims established as of the date of the commencement of the proceedings by the Attorney General.

People ex rel. Attorney General v. Life and Reserve Association of Buffalo, 150 N. Y. 94, 45 N. E. 8, was like the case of the Equitable Reserve Fund Life Association.

· In People v. Commercial Alliance Life Insurance Company, 154 N. Y. 95, 47 N. E. 968, being a proceeding by the Attorney General to have the insurance company adjudged insolvent and to have its assets distributed, a policyholder named Miller died five days after the judgment was rendered dissolving the corporation, and the guardian for the beneficiaries under two life insurance policies claimed the amount of the policies. The referee refused to allow the claim, maintaining that the rights of the creditors were fixed at the date of the commencement of the suit by the Attor-

ney General to dissolve the corporation. The Court of Appeals of New York affirmed the ruling. It was not denied that the court that dissolved the corporation had jurisdiction over Miller, or that he had notice of the insolvency proceedings.

In Commonwealth ex rel. Kirkpatrick, Attorney General, v. American Life Insurance Company, 29 A. 660, 663, by the Supreme Court of Pennsylvania, it was held that the insolvency and consequent dissolution of the corporation was a breach of the policy contract. Hence it was said: .

"The claim in all these cases, as is shown in the case first above quoted, is in the nature of damages for a breach of contract, and this breach occurs at the date of the decree of dissolution. The right of action for the damages suffered accrues at that date, and the damages in each case are the net value of each policy at that time."

In Fogg v. Supreme Lodge of United Order of Golden Lion, 159 Mass. 9, 33 N. E. 692, the Order of the Golden Lion was a mutual benefit insurance corporation, of which all of the money derived from assessments was divided into two funds, one called a "relief fund," for the exclusive payment of matured endowment certificates, and the other called a "benefit fund," to be applied exclusively to the payment of disability benefits. A receiver was appointed to wind up the affairs of the company. It was held that, although the method of doing business might have been illegal and ultra vires, the certificate holders could not recover the assessments and initiation fees paid by them, as for money had and received, but, in the distribution of the assets, each certificate holder should receive from the fund derived from the assessments dividends in proportion to the amount paid by him into the fund. And it was held that the date of filing of the bill in equity was to be taken as

the date which, as a general rule, fixed the rights of the parties. The decision is not appropriate here.

Burdon v. Massachusetts Safety Fund Association, 147 Mass. 360, 17 N. E. 874, was a suit by the receiver of an insolvent corporation to set aside certain attachments of the property of the corporation and to declare that no lien resulted therefrom. The court dissolved the attachments and held that the claimants of death losses should take nothing from the so-called safety fund, and that the date of the filing of the bill for dissolution of the corporation should be taken as the date on which the certificate holders should have their claims fixed. That case is not in point.

Todd v. German-American Insurance Company of New York, 2 Ga. App. 789, 59 S. E. 94, by the Court of Appeals, was a suit on a fire insurance policy which had been issued by the German-American Insurance Company after the Traders' Insurance Company had become bankrupt. The agent for the Traders' Insurance Company was duly notified of the bankruptcy and rewrote the insurance for Todd in the German-American Insurance Company. The city court of Macon rendered a judgment of nonsuit against Todd, on the ground, as we understand, that the insurance agent was not authorized to write the policy in the German-American Company, but the judgment was reversed by the Court of Appeals. The decision is not at all appropriate here.

In Fuller v. Wright, Insurance Commissioner, 147 Ga. 70, 92 S. E. 873, L. R. A. 1917E, 1139, the insured suffered a total disability before the liquidation proceedings were brought against the insurance company by the insurance commissioner, and the insured remained disabled. continuously for more than a year after the order of liquidation was rendered, and then she died. It was held that the beneficiary of the life insurance policy was not entitled to share in the distribution of the assets of the insolvent company. There was no issue as to notice or jurisdiction.

Lucas v. Pittsburgh Life & Trust Company, 137 Va. 255, 119 S. E. 109, by the Supreme Court of Appeals of Virginia, was a suit against the receiver of the Pittsburgh Life & Trust Company, and against the Metropolitan Life Insurance Company, on a policy issued by the Pittsburgh Life & Trust Company, a Philadelphia corporation, authorized to do business in Virginia. The Pittsburgh corporation was decreed to be insolvent and was placed in the hands of a receiver by a Pennsylvania court. The receiver entered into a contract with the Metropolitan Life Insurance Company, with the approval of the Pennsylvania court, by which agreement the Metropolitan Company agreed to assume the obligations of the Pittsburgh Company to its policyholders, provided the policyholders would consent thereto and perform certain obligations contained in the agreement. A notice of this proposal was sent to each policyholder, including the insured, Lucas, but he failed to accept the offer of the Metropolitan Company, and for that reason it was held that the latter company was not liable. But the decree was modified by the Supreme Court of Appeals of Virginia so as to allow the plaintiff a reasonable time in which to amend her bill by alleging that the Metropolitan Company had withdrawn the deposit which the Pittsburgh Life & Trust Company had made with the state treasurer. As to the Pittsburgh Company, the bill of the beneficiary under the policy was dismissed; but it must be borne in mind that the insured had been notified of the insolvency proceedings and had had an opportunity to transfer the insurance to the Metropolitan Company, which

he had failed to do. Lucas was killed in action at Argonne Forest, in France, after the receiver was appointed for the Pittsburgh Company. His mother was the beneficiary named in the policy.

State ex rel. Gibson v. American Bonding Company, 206 Iowa, 988, 221 N. W. 585, by the Supreme Court of Iowa, was not a suit to recover a loss under a policy of insurance, but a suit to recover the unearned part of the premium. The only question in the case was whether the policyholder was entitled to have his claim for the unearned premium paid out of securities deposited by the company with the state insurance commissioner for the protection of policyholders. The court ruled that the policyholder was entitled to payment out of the securities, even though he was claiming only an unearned premium and not a loss under the policy.

In Johnson v. Button, Insurance Commissioner, 120 Va. 339, 91 S. E. 151, the American Union Fire Insurance Company, a Pennsylvania corporation, having complied with the statute of Virginia by depositing $25,000 of securities with the state treasurer, was licensed to do business in Virginia. The company appointed Sol. Miller general agent in Virginia. The company was placed in the hands of a receiver in Pennsylvania, and the state insurance commissioner was ordered to dissolve the corporation and liquidate its affairs. Button, in his capacity as commissioner of insurance, brought proceedings in Virginia to take possession of the assets of the corporation in that state and to distribute the proceeds among those ascertained to be entitled thereto. Miller was instructed by the general receiver to discontinue writing insurance for the company, and was advised that all of the policies should be canceled. He canceled all of the policies written by him and returned the unearned part of the premiums to the policy-

holders. Thereafter he claimed reimbursement from the general receiver and the latter claimed that Miller should deduct his commissions on the unearned part of the premiums on the policies which were canceled. The only question in the case was whether Miller should deduct that part of his commissions, and the court decided in his favor. The decision is not at all appropriate to the present case.

An interesting review of the decisions on this subject is to be found in the note to the Georgia case of Fuller v. Wright, Insurance Commissioner (147 Ga. 70, 92 S. E. 873), reported in L. R. A. 1917E, 1139, cited by counsel for appellant; but we do not find anything there that is not in accord with our opinion in the present case.

■ Appellant's alternative complaint of the amount of the attorney's fee which appellant has been condemned to pay is well founded. The judge allowed 25 per cent. on the amount of the judgment, which amount, with legal interest and the 12 per cent. statutory penalty allowed, is about $3,500. The statute on the subject (section 3 of Act No. 168 of 1908) allows 12 per cent. damages and a "reasonable attorney's fee." In Whiteside v. Lafayette Fire Insurance Company, 143 La. 675, 79 So. 217, where the judgment was for $4,000, plus legal interest and $480 statutory damages, a fee of $400 was allowed. In Pouns v. Citizens' Fire Insurance Company, 144 La. 497, 80 So. 672, where the amount of the judgment was $2,449.23, plus the 12 per cent. damages, the attorney's fee was fixed at $250. And, in Davis v. National Fire Insurance Company, 169 La. 63, 124 So. 147, an attorney's fee of $70 was allowed on a judgment for $500 plus legal interest and 12 per cent. damages, and a fee of only $50 was allowed on a judgment for $300 plus legal interest and 12 per cent. damages. Accordingly the fee allowed in this

case should be 10 per cent. on the total amount of the judgment.

The judgment is amended by reducing the attorney's fee from 25 per cent. to 10 per cent., and, as amended, the judgment is affirmed. The appellant is to pay the costs incurred in the civil district court, and the appellee the costs of appeal.