**AMERICAN UNITED LIFE INS. CO. et al.
v. FISCHER, Com'r of Insurance of
Iowa.**

**No. 11852.**

Circuit Court of Appeals, Eighth Circuit.
July 30, 1942.

Rehearing Denied Sept. 22, 1942.

645

Clayton F. Jennings, of Lansing, Mich. (Phineas M. Henry, of Des Moines, Iowa, on the brief), for appellant Eugene P. Berry, of Detroit, Mich., Commissioner of Insurance of the State of Michigan, as receiver of American Life Ins. Co. of Detroit, Mich.

Robert A. Adams, of Indianapolis, Ind. (Aaron T. Jahr, of Indianapolis, Ind., and Phineas M. Henry, of Des Moines, Iowa, on the brief), for appellant American United Life Ins. Co.

John M. Scott, of Fort Worth, Tex. (McGown, McGown, Godfrey & Logan, H. T. McGown, H. L. Logan, Jr., and B. E. Godfrey, all of Fort Worth, Tex., and Phineas M. Henry, of Des Moines, Iowa, on the brief), for appellant Dan E. Lydick, receiver of American Life Ins. Co. of Detroit, Mich. (in Texas).

Willis J. O'Brien, of Des Moines, Iowa (John N. Hughes, John N. Hughes, Jr., and Hughes, O'Brien and Hughes, all of Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The question is as to the status, under Iowa law, of a deposit of securities maintained with the Iowa Insurance Commissioner, by a Michigan life company which is now in receivership in the Michigan state court. After the appointment of a temporary receiver in Michigan, the Iowa state court appointed the Iowa Insurance Commissioner as independent receiver in that state of the deposited securities, and authorized him to institute proceedings in the federal court to establish his right to these securities. This proceeding was accordingly brought in the federal court in Iowa, with service of process had under 36 Stat. 1102, 28 U.S.C.A. § 118, against the Michigan receiver, a receiver appointed in Texas in aid of the Michigan receivership, and an Indiana company which had entered into an agreement with the Michigan receiver to reinsure the policies of the insolvent company.

The facts have been quite fully stated in our former opinion, 117 F.2d 811, and in that of the Supreme Court, Fischer v. American United Life Ins. Co., 314 U.S. 549, 62 S.Ct. 380, 86 L.Ed. 444, and only a brief summary is necessary here.

Some fifteen to seventeen years before the Michigan company was thrown into receivership in its home state, it had reinsured and taken over a solvent Iowa company, under a reinsurance agreement which had been approved by the proper insurance authorities of the two states. At that time, the Iowa company had on deposit with the Iowa Insurance Commissioner securities in an amount equal to the net cash value of its outstanding policies. The Iowa statutes imposed this requirement upon all Iowa life companies and provided for an annual adjustment of these reserves by actuarial policy valuations. Code of Iowa, 1939, §§ 8654, 8655, 8664. So long as a company remained in good standing, it was authorized to collect the interest or dividends upon the securities and to make approved substitutions. Id., §§ 8664, 8665, 8741.1. There was a further provision that "The securities of a defaulting or insolvent company, or a company against which proceedings [for receivership instituted at the request of the Commissioner] are pending * * *, on deposit shall vest in the state for the benefit of the policies on which such deposits were made, and the proceeds of the same shall, by the order of the court upon final hearing, be divided among the holders thereof in the proportion of the last annual valuation of the same, or at any time be applied to the purchase of reinsurance for their benefit". Id., § 8663. It was also provided that, "if any company fails to deposit additional security when and as called for by the commissioner, or pending any proceedings to close up or enjoin it, the commissioner shall collect such dividends or interest and add the same to such securities". Id., § 8665.

The reinsurance agreement between the Michigan company and the Iowa company contained a provision that the transfer of the assets of the Iowa company should be "subject to the requirements of the statutes of the State of Iowa relative to the deposit with the Commissioner of Insurance of that State of securities representing the net cash value of outstanding contracts", and that "the deposits required by the laws of the State of Iowa to be made with the Commissioner of Insurance on all contracts * * * reinsured will be now and hereafter maintained at all times, both in amount and character of securities, as would have been re-

646

quired of said [Iowa company] under the laws of said State of Iowa."

The Iowa company's policies, which were reinsured, had printed on their face, "The full reserve on this policy is secured by a deposit of approved securities with the State of Iowa", and in the body of the policies there was a provision that "The legal reserve on this policy shall be invested in approved securities and deposited with the State of Iowa as required by law." The Michigan company did not attempt to rewrite the policies of the Iowa company, but simply issued to each policy holder a certificate of assumption, agreeing to "carry out all the provisions of said policy and perform all of the obligations therein contained as fully as the same would or should have been performed by [the Iowa company]". The Michigan company never had questioned its obligation to maintain the deposit, but had regularly adjusted the amount of the securities to the net cash value of the policies, during the fifteen to seventeen years that preceded the insolvency proceedings against it in the Michigan state court.

The statutory provisions which have been referred to, relative to the depositing and maintaining, by an Iowa life company, with the State Insurance Commissioner, of securities in an amount equal to the net cash value of all policies issued by it, must be held to create, as a matter of state policy, protective lien or trust rights in favor of such policy holders in the deposited securities. Whether the formal position of the Commissioner, originally and until default or insolvency has occurred on the part of the company, or until the institution of receivership proceedings against it at the Commissioner's request, is in the nature of a pledge holder[1] or other escrow depositee[2] is unimportant here. Under the statute, title to the securities remains in the company until one of the three contingencies specified occurs, with the right on its part, during such period, to collect the interest or dividends and to make substitutions of securities with the approval of the Commissioner. But as against the company and its other creditors, the policy holders, through the Commissioner, have controlling lien or trust rights in the securities on deposit, and, upon the happening of any of the three contingencies specified in the statute, legal title to the securities is made to pass out of the company and to vest in the State. The Commissioner on behalf of the State then becomes a trustee for the policy holders, in his official capacity as Commissioner or in his subsequent, facilitating capacity of receiver and liquidating officer under the statute.[3] From the time that legal title to the securities passes out of the company, the Commissioner has the right and is charged with the duty of collecting the interest or dividends on the securities and to "add the same to such securities" (§ 8665). Under the statute (§ 8663), the proceeds of the securities "shall, by the order of the court upon final hearing, be divided among the [policy] holders * * * in the proportion of the last annual valuation of the same, or at any time be applied to the purchase of reinsurance for their benefit".

The solicitude of these statutory provisions in protecting the policy holders of an Iowa company is merely part of a general policy which the State of Iowa has evidenced in other respects also, in connection with insurance company insolvencies. Thus, its courts have declared that even a voluntary deposit of securities with the Commissioner, made generally "for the protection of policyholders", though not required by law, will, on insolvency, constitute a trust in favor of the policy holders, as against the company and its other creditors. State ex rel. Gibson v. American Bonding & Casualty Co., 206 Iowa 988, 221 N.W. 585, 586. It has further been held in Iowa that, in case of the insolvency of a foreign insurance company, "The well-settled rule in this state is that the claim of a foreign receiver to funds of the corporation found in this state will not be recognized even by way of comity if the result would be to relegate the creditors of the corporation in this state to the relief to which they would be entitled in a foreign jurisdiction, when there are funds of the corporation in the state from which such claims may be satisfied".[4] Shloss v. Metro-

---

[1] See 41 Am.Jur. 599.

[2] See Restatement, Trusts, § 32, Comment c.

[3] Code of Iowa, 1939, § 8613.1 provides that "The commissioner of insurance henceforth shall be the receiver and/or liquidating officer for any insurance company, association or insurance carrier, * * *."

[4] Without any attempted consideration of this holding here, we refer to it merely as further emphasizing a manifest

politan Surety Co., 149 Iowa 382, 128 N.W. 384, 385.[5]

From all of the foregoing, it is clear, as we have indicated, that, as part of the public policy of Iowa, the policy holders of the Iowa company here involved were vested with substantive rights in such securities as might be on deposit with the State Insurance Commissioner under the statute, which rights were superior to those of the company or its other creditors in such assets, and which gave the securities, upon default, insolvency, or the institution of receivership proceedings at the Commissioner's request, an exclusively local situs.

The reinsurance statute, under which the Michigan company was permitted to take over the Iowa company, enjoined upon the Commission, which was required to approve any reinsurance agreement with another company, the duty of seeing that "the interests of the policyholders * * * are properly protected", and to approve only such an agreement "as may seem to it best for the interests of the policyholders" (§ 9111). The reinsurance agreement which the Iowa Commission required and approved in this case provided, as has been pointed out above, that the transfer of the assets of the Iowa company to the Michigan company should be "subject to the requirements of the statutes of the State of Iowa relative to the deposit with the Commissioner of Insurance of that State of securities representing the net cash value of outstanding contracts", and that "the deposits required by the laws of the State of Iowa to be made with the Commissioner of Insurance on all contracts * * * reinsured will be now and hereafter maintained at all times, both in amount and character of securities, as would have been required of said [Iowa company] under the laws of said State of Iowa". The Michigan company accepted the reinsurance agreement, after it had been approved by the proper authority under Michigan law. It took over the Iowa company's assets subject to the conditions imposed by the Iowa Commission. It has retained all the benefits of the transaction. It has recognized and undertaken to perform the obligation which it assumed, of maintaining the deposit in favor of the Iowa company's policy holders, down to the time of the institution of the insolvency proceedings against it in the Michigan state court.

The effect of the transaction under Iowa law, and by virtue of the powers vested in the approving Commission, was simply to substitute the Michigan company for the Iowa company in the performance of the obligations of the Iowa company to its policy holders under the Iowa statutes, and to leave the situation, with respect to the securities here involved, the same under Iowa law as if the Iowa company had continued to maintain the deposit. The power to preserve the statutory trust which was then in existence in favor of the Iowa company's policy holders, and to require that it should remain subject to the terms and conditions of the statutes by which it was created, in its continuing obligations, was, we think, clearly within the authority conferred by the legislature upon the approving Commission. Indeed, under State ex rel. Gibson v. American Bonding & Casualty Co., 206 Iowa 988, 221 N.W. 585, referred to above, the result in the present situation probably would be the same, under Iowa law, if the deposit were treated merely as an independent trust, created as a condition of the reinsurance agreement and not resting upon any attempted substitution, under the Iowa reinsurance statutes, of the Michigan company for the Iowa company, in the future performance of the obligations of the already existing statutory trust.

We therefore hold that, under the law of Iowa, title to the securities of the Michigan company, maintained with and in the hands of the Iowa Insurance Commissioner, at the time the Michigan company became insolvent, in fulfillment of its obligation under the reinsurance agreement with the old Iowa company, has become vested in the State of Iowa, and that the Iowa Insurance Commissioner, on behalf of

policy of state protectiveness in insurance company insolvencies and liquidations.

[5] The opinion further states: "The rights of the creditors in this state to attach the funds of a foreign insolvent corporation for the purpose of enforcing payment notwithstanding the receivership in the state of the corporation's home is not a matter of procedure, but one of substantive law, and we fail to see how any statute in New York could authorize such receivership as would exempt the receiver from the limitations imposed on his power by the rules of law recognized in this state." 128 N.W. at page 386. See, also, Watts v. Southern Surety Co., 216 Iowa 150, 248 N.W. 347.

648

the State, in his official capacity and in his capacity as statutory receiver, has the right, independent of any domiciliary or ancillary receivership of the Michigan company, to administer such securities for the benefit of the policy holders of the old Iowa company. The rights of the Iowa Insurance Commissioner include, as an incident of the vesting of title in the State, the right to receive and collect all payments of interest, dividends, and principal that may thereafter be made. It includes also, of course, as a necessary incident, the vesting of any existing collateral upon the securities. The trial court held that such title and incidental rights became vested in the State of Iowa on April 12, 1938, when the Michigan company was shown to have been insolvent, but the receivership decree of the Iowa state court, for some unexplained reason, recites that title to the securities became vested in the State of Iowa on June 17, 1938. As long as the state court decree stands unmodified, we must accept June 17, 1938, as the controlling date here, without any independent determination of the question under the statute.

■ The vesting of title as of June 17, 1938, which was subsequent to the appointment of a temporary receiver in the Michigan state court, in no way creates any subordinacy to the Michigan receivership here, since, under Iowa law, as against the Iowa Insurance Commissioner, the Michigan receiver never had possession, either actual or constructive, of the deposited securities, and, after June 17, 1938, he had completely lost title. The same situation would be true, under the Iowa statutes, of any one claiming ancillary or derivative rights, such as the Texas receiver, or the Indiana company which has made a reinsurance agreement with the Michigan receiver. The Michigan receiver and the Indiana company contend here that many of the policy holders of the old Iowa company have lost their rights to the benefits of the Iowa deposit, by the filing of claims in the Michigan receivership or by the acceptance of the reinsurance agreement made with the Indiana company, but, without regard to the ultimate merits of these contentions, they are, for the purposes of this proceeding, merely questions incident to the administration of the deposited securities in the Iowa court, and do not affect the general vesting of the title in the Iowa Insurance Commissioner as of June 17, 1938, or the primary right of the Commissioner and the Iowa courts to control the securities.

The trial court's decree goes further than the adjudication which we have just made of the rights of the Iowa Insurance Commissioner and receiver to the deposited securities and to the collections of interest, dividends, and principal thereon. It attempts to grant incidental relief, such as an accounting on the part of the several receivers, not within the purview of the initial proceeding and the service of process had therein, but which the court thought proper on the basis of the general appearance which it felt the defendants had made in the pleadings which they filed. We think the purpose of the plaintiff will be sufficiently served here by an adjudication of the fundamental rights of the parties under the Iowa law, as we have done, which we believe was what the Iowa state court contemplated in its original order of authorization. We shall therefore confine our decree to this adjudication.

The trial court's decree will accordingly be modified to eliminate the provisions for incidental relief granted, and to make the date of the vesting of the title to the securities in the State of Iowa conform to the recital in the receivership decree of the Iowa state court, and, as thus modified, the judgment will be affirmed.

Modified and affirmed.

## On Petition for Rehearing.

JOHNSEN, Circuit Judge.

A petition for rehearing has been filed by the Texas receiver, arguing that, by our decision, "the orderly administration of the insolvent company's affairs in Texas has been inadvertently cast into chaos".

Our opinion declares that, as a matter of Iowa law and policy, the securities deposited with the Iowa Insurance Commissioner, and in his possession, were charged with protective lien or trust rights in favor of the policyholders of the old Iowa company, and that, on June 17, 1938, legal title to these securities became vested in the State of Iowa, for the benefit of such policyholders, with the right, from that time on, in the Iowa Insurance Commissioner, in his official capacity or in his facilitating status as receiver, to receive and collect payments of interest, dividends and principal, as inherent incidents of his primary right of title and possession. Insofar as such property is capable of being ad-

ministered by the Iowa courts, the rights existing under Iowa law are clearly primary and independent, and, as we expressed it in our opinion, they are without "any subordinacy to the Michigan receivership here" or to "any one claiming ancillary or derivative rights, such as the Texas receiver, or the Indiana company which has made a reinsurance agreement with the Michigan receiver."

Since we were assuming to define only the rights of the Iowa Commissioner under Iowa law, as they might be capable of enforcement in the Iowa courts—for which the District Court in this proceeding was in effect substituting—it did not seem necessary to us to point out, what is, of course, clearly settled by Clark v. Williard, 294 U.S. 211, 55 S.Ct. 356, 357, 79 L. Ed. 865, 98 A.L.R. 347, that, if the Iowa Commissioner, in his official capacity or in his facilitating status as receiver, found it necessary to resort to the courts of another state, he obviously would subject himself to the public policy of that state. "He must submit * * * to the mandate of the sovereignty that has the physical control of what he would reduce to his possession." 294 U.S. at page 214, 55 S.Ct. at page 357. Such other state in turn, as a matter of full faith and credit, would be required to recognize the status and rights created by Iowa law, "with whatever rights and privileges accompany such recognition according to [its own] law". 294 U.S. at page 215, 55 S.Ct. at page 358.

With this implication necessarily inhering in our original opinion, the petition for rehearing will be denied.